**William W. SACHS et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C 75–247.**

United States District Court, N. D. Ohio, W. D.

Nov. 22, 1976.

Alfred J. Cooper, Busick, Cooper & Hall, Fremont, Ohio, Daniel J. Sammon, John P. Rice, Jr., Cleveland, Ohio, for plaintiffs.

Archie Parnell, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

### OPINION and ORDER

WALINSKI, Justice:

This cause is before the Court on cross motions for summary judgment filed pursuant to Fed.R.Civ.P. 56.

Plaintiffs William W. Sachs and Dorothy A. Sachs are husband and wife. They owned 79 acres and leased 720 acres of farmland in Sandusky County, Ohio, in 1971, the tax year in suit, on which they raised sugar beets, tomatoes and cucumbers (pickles). Plaintiffs employed migrant farm workers to assist them in the cultivation and harvesting of these crops.

Mr. Sachs obtained this migrant work force by traveling to Texas in the spring of 1971. In Texas, he contacted workers who had assisted him in the past. Additional workers were obtained by contacting migrants whose names were referred to him by workers he had employed in the past. These contacts were made with individual, distinct family units consisting of a husband, wife and children. Mr. Sachs negotiated with the heads of each of these family groups who generally were the fathers. Mr. Sachs agreed to provide one-way travel expenses from Texas to Ohio. These expenses amounted to Ten Dollars for each member of the family over sixteen years of age. The family groups so employed arrived in the spring of 1971.

As noted above, the migrants cultivated and harvested the sugar beet, tomato and cucumber crops. They blocked and hoed the sugar beet crop and were paid on a per hour basis. For other general cultivation work done in connection with the sugar beet and tomato crops, they were also paid on a per hour basis. For harvesting the tomato crop, the family units were paid on a per hamper-picked basis. Mr. Sachs assigned a portion of the cucumber fields to each family unit. During the growing season, it was the responsibility of each family unit to care for their assigned block. They then harvested the cucumbers and were paid an amount equal to one-half of the receipts received by Mr. Sachs from their sale.

In general, all of the payments referred to above were made to the family heads. They in turn provided the members of their families with food, shelter and clothing. Children were occasionally given an allowance, but they did not receive a share of the payment that would have been commensurate with the work they performed.

Plaintiffs supplied the migrants with the insecticides and fertilizers used in the cultivation of the crops. With the exception of the hoes purchased by the migrants, the plaintiffs supplied them with all of the necessary farming implements. Mr. Sachs instructed each of the heads of households on the proper way to block and hoe the sugar beets. He also informed them of the proper way to pick tomatoes and cucumbers. Mr. Sachs had the right to discharge the migrants at any time, and he had the right to direct their activities in the fields. *See, e.g.,* Deposition of Reymundo Nieto at 13. The various family groups had the right to terminate their employment relationship

without incurring any liability to the plaintiffs.

For the tax year 1971, the plaintiffs treated the payments made to the migrants for work performed in connection with the cultivation and harvesting of the sugar beet and tomato crops as wages to employees. Accordingly, they withheld F.I.C.A. tax and contributed the employer's excise tax on these payments. For the work performed in connection with the cucumber crop, however, the plaintiffs treated the migrants as share farmers and did not withhold any F.I.C.A. tax or pay the excise required for payments to employees. 26 U.S.C. § 3121(o). This treatment of the various wage payments was reflected in the Employment Tax Return (Form 943) filed for the year 1971.

After auditing the Plaintiffs' 1971 Form 943, the Internal Revenue Service proposed an additional F.I.C.A. tax liability of $1,541.02 with penalty and interest. This proposed deficiency was attributable to the share of the crop payments to the migrant farm workers who cultivated and harvested the cucumber crop. Shortly thereafter, the plaintiffs protested this proposed assessment and in addition filed a claim for refund of employment taxes paid for those payments to the migrant farm workers for the cultivation and harvesting of the tomato and sugar beet crops. It was the plaintiffs' contention that the family heads to whom the payments were made were "crew leaders" within the meaning of § 3121(o) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 3121(o), and that those payments should have been considered as amounts paid to self-employed individuals.

Plaintiffs' claim for refund was formally disallowed on September 16, 1974. On November 14, 1974, the Internal Revenue Service timely assessed and proposed additional F.I.C.A. taxes in the amount of $1,541.02, together with penalties and interest ($322.55) for a total amount of $1,873.57. Plaintiffs paid the assessment and filed a claim for refund which was formally disallowed on February 14, 1975. This suit was filed on June 13, 1975.

## STATUTORY FRAMEWORK

Section 3102(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 3102(a) [hereinafter referred to as IRC], requires an employer to withhold social security taxes from his employee's wages. In addition, IRC § 3111, imposes on every employer an excise tax equal to 4.4% of the wages he pays to his employees. For the purposes of the two aforementioned sections, IRC § 3121(d)(2), defines the term "employee" as any individual who has the status of an employee "under the usual common law rules." In the area of agricultural labor, however, a farmer-employer is not required to withhold social security taxes from, or to pay the excise taxes on, payments made to individuals who are classified either as share farmers or crew leaders.

IRC § 3121(b)(16), excepts from the definition of "employment", as that term is used in §§ 3102(a) and 3111, the relationship of a tenant or owner of land to a share farmer. If a share farmer relationship as defined in § 3121(b)(2) is found to exist, the share farmer is considered as a self-employed individual for purposes of the self-employment tax imposed by § 1402. IRC § 1402(c)(2)(B).

Similarly, IRC § 3121(o), provides that an individual who fits within the definition of a "crew leader" shall be deemed not to be an employee under §§ 3102 and 3111. The individuals furnished by the crew leader to a farmer are then considered to be employees of the crew leader. The crew leader in turn must withhold the social security taxes from his employees' wages and pay the excise tax imposed on employers.

Plaintiffs contend that payments to the heads of the migrant families who cultivated and harvested the tomato and sugar beet crops were payments to crew leaders. In accordance with that position, they assert that they are entitled to a refund. Similarly, they contend that the payments to the family heads for the cultivation and harvesting of the cucumber crop were pay-

ments to share farmers, and that they are also entitled to a refund for the excise taxes assessed thereon. The IRS asserts, of course, that these payments were "wage" payments to "employees", not entitled to either of the exceptions asserted by the plaintiffs.

## COMMON LAW EMPLOYEE STATUS

At the outset, the Internal Revenue Service asserts that the migrant farm workers employed by plaintiffs had the status of employees under the common law rules. Plaintiffs do not appear to contend otherwise.

Application of the facts of this case to the various tests which have been devised for the determination of this relationship, *see, e. g., Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *Avis Rent A Car System v. United States,* 503 F.2d 423 (2d Cir. 1974); 26 C.F.R. § 31.3121(d)–1(c), satisfies the Court that the migrant farm workers herein were employees "under the usual common law rules." IRC § 3121(d)(2).

## SHARE FARMER

As noted above, it is the plaintiffs' contention that the payments to the heads of the migrant farm workers' families for the cultivation and harvesting of the cucumber crop were payments to share farmers, exempt from the requirements of §§ 3102(a) and 3111.

For the agreement between the plaintiffs and the migrant farm workers herein to be considered a share farming arrangement within the meaning of § 3121(b)(16), the three requirements of that section must be satisfied. That section provides in full:

(16) service performed by an individual under an arrangement with the owner or tenant of land pursuant to which—

(A) such individual undertakes to produce agricultural or horticultural commodities (including livestock, bees, poultry, and fur-bearing animals and wildlife) on such land,

(B) the agricultural or horticultural commodities produced by such individual, or the proceeds therefrom, are to be divided between such individual and such owner or tenant, and

(C) the amount of such individual's share depends on the amount of the agricultural or horticultural commodities produced.

Plaintiffs assert that the arrangement they had with the migrants fully complied with the statute. It is clear that the second and third provisions have been satisfied, and the government does not appear to argue otherwise. Pursuant to their agreement, the migrants were to receive a one-half share of the proceeds from the sale of the cucumbers. The migrants' share therefore depended on the amount of the agricultural commodities produced, and the agreement perforce contemplated the division of the proceeds between the plaintiffs and the migrant farm workers. The dispute herein is focused on the first element of the test.

It is the government's position that the phrase "undertakes to produce a crop or livestock" means to perform or assume responsibility for the performance of substantially all of the physical labor incident to the production of the commodity. The government asserts that this means that the individual must have the responsibility for performing the work of caring for the crop from its inception up to and including its harvesting. As the migrant farm workers here, continues its argument, did not plant the cucumber crop or have initial responsibility for its care, the first requirement of § 3121(b)(16) was not met. The government has not, however, cited the Court to any authorities in support of its position.

Plaintiffs concede that the migrant farm workers did not plant the cucumber crop. In addition, they admit that Mr. Sachs provided the insecticides and fertilizers used on the crop. The migrants assumed the responsibility for ensuring that the crop was properly cultivated during its growth, although Mr. Sachs made periodic checks to

determine whether or not proper cultivation techniques were being utilized.

A plain meaning analysis of the phrase "undertakes to produce" is not particularly helpful. It is sufficiently ambiguous to make both parties' positions tenable. An examination of the legislative history, the regulations promulgated by the Internal Revenue Service and Rev.Rul. 55–538, 1955–2 Cum.Bull. 313, satisfy the Court that the migrant farm workers involved herein were share farmers within the meaning of the section.

Section 3121(b)(16) in its present form was added to the IRC in 1956. The legislative history makes it clear that by enacting this section, Congress intended to ease the task of determining whether a person who operates a farm under a share farming agreement with the owner or tenant is a share farmer and therefore a self-employed individual or an employee. The difficulty in making this determination arose because these persons "have some characteristics of employees and some characteristics of self-employed persons." Congress noted that:

> in some instances the landowner may direct the share farmer to nearly the same extent, on an overall basis, as he does individuals who clearly are employees. On the other hand, share farmers participate directly in the risk of farming; their return from the undertaking is dependent upon the amount of the crop or livestock produced.

S.Rep.No. 2133, 84th Cong., 2d Sess. (1956); U.S. Code Cong. & Admin. News, 3883–84.

■ It is thus apparent that Mr. Sachs' exercise of a degree of control over the direction of the migrants is not dispositive. It further appears that in making the determination of whether a share farming arrangement exists, Congress intended to place the emphasis on the risk sharing element.

That the migrant farm workers here are share farmers is further indicated by the fact that in adding § 3121(b)(16) to the IRC in 1956, Congress intended to give "statutory recognition to the interpretation being followed in administering the present law."

*Id.* The interpretation being followed by the Internal Revenue Service prior to 1956 is clearly set forth in Rev.Rul. 55–538, *supra.*

In that ruling, the Internal Revenue Service had been asked to determine the status of an individual who entered into an agreement with an owner or tenant of land to produce crops in return for a share of the crops produced. Pursuant to that agreement, the owner agreed to furnish and plant the seed and to furnish the equipment needed for cultivation. The owner also periodically inspected the area assigned to each share farmer to determine whether he was properly caring for the area. The remaining terms of the agreement were substantially similar to the arrangement between Mr. Sachs and the migrant workers in this case.

Applying a three-pronged test which was essentially the same as the definition found in § 3121(b)(16), the Internal Revenue Service held the individuals to be share farmers —"independent contractors"—and not employees.

■ Accordingly, the Court holds that the migrant farm workers who assisted the plaintiffs in the production of the cucumber crop were share farmers and not employees of the plaintiffs.

### CREW LEADER

Section 3121(*o*) defines a "crew leader" as:

> an individual who furnishes individuals to perform agricultural labor for another person, if such individual pays (either on his own behalf or on behalf of such person) the individuals so furnished by him for the agricultural labor performed by them and if such individual has not entered into a written agreement with such person whereby such individual has been designated as an employee of such person.

That section further provides that 'the individuals furnished by the crew leader shall be deemed employees of the crew leader, and that the crew leader shall not be

deemed to be an employee of the farmer who utilizes his services.

Plaintiffs contend that the heads of the migrant farm worker families are "crew leaders." They assert that the family heads furnish individuals, their wives and children, to perform agricultural labor. In addition, they allege that the family heads pay the individuals so furnished for the agricultural labor performed by them in the form of food, shelter, clothing and a weekly allowance. Finally, they contend, and the government concedes, that the family members furnished have not entered into written agreements with the plaintiffs designating them as employees of the plaintiffs.

The government argues that "it cannot be said that a family head furnished his wife and children as individuals to perform agricultural labor for the Sachs." It is their contention that Mr. Sachs furnished the labor force by traveling to Texas and making arrangements with the various family heads. The government also argues that the second requirement that the crew leader "pay" the individuals furnished by him was not satisfied in this case. By supplying their families with food and clothing, the family heads were simply complying with their duty of maintenance and support under state law as it existed in 1971. See Ohio Rev. Code § 3113.01 (repealed January 1, 1974).

Again, the plain meaning of § 3121(o) is not so clear as to make the plaintiffs' contention wholly untenable. The legislative history, however, tends to establish that the family heads here do not fit within the first test of this section.

In the Senate Report which accompanied the bill, crew leaders were described as persons "who recruit crews of workers and transport them to the farms." S.Rep.No. 2133, 84th Cong., 2d Sess. (1956); U.S. Code Cong. & Admin. News, 3888. Under this description, it can hardly be said that the family heads involved herein "recruited" their family members for work on the plaintiffs' farm. It was Mr. Sachs who recruited the migrant farm worker families when he traveled to Texas in the spring of 1971.

Further support for this reading of the first prong of the crew leader test is obtained by reading § 3121(o) in pari materia with the Farm Labor Contractor Registration Act of 1963, 7 U.S.C. § 2041 et seq. Before examining the relevant section of that Act however, it would be helpful to review some of the history which led to its passage.

In enacting the crew leader amendment in 1956, Congress sought to achieve three objectives. Prior to the enactment of § 3121(o), the determination of whether a crew leader was an independent contractor or an employee of the farmer who used his services was made by examining the employment relationship in the light of the common law control test. To make this determination easier Congress enacted this definition. In addition, Congress sought to ease the record keeping burden of the farmer and to extend the coverage of old age and survivors insurance to as many farm workers as possible. Congress noted:

> Your committee believes that deeming the crew leader to be the employer of the individuals he recruits and pays would simplify the reporting of workers for social-security purposes, and would also be to the advantage of many of the farm workers who customarily work as members of a crew. Since they generally work for the same crew leader longer than for a single farm operator, they will have a better chance of having their farm work covered by old-age and survivors insurance. Also, a larger proportion of their farm wages will be covered if the crew leader is the employer.

S.Rep.No. 2133, U.S. Code Cong. & Admin. News 1956, p. 3888 supra.

Because of the difficulty in keeping track of crew leaders and the lack of information concerning their activities, it was impossible to ascertain whether crew leaders were complying with the old age and survivors insurance provisions of social security. To remedy this problem and others, the Farm Labor Contractor Registration Act of 1963

**1098**

was passed. S.Rep.No. 202, 88th Cong., 2d Sess. (1964); U.S. Code Cong. & Admin. News, 3690–93.

In that Act, a "farm labor contractor", a term which Congress recognized was synonymous with crew leader, *id.* at 3690, is defined:

> (b) The term "farm labor contractor" means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports ten or more migrant workers (*excluding members of his immediate family*) at any one time in any calendar year for interstate agricultural employment.

7 U.S.C. § 2042(b). (Emphasis added.) Under this definition, the heads of the migrant families who supplied only members of their own families to the plaintiffs were not "crew leaders."

For the reasons stated above, the Court concludes that the family heads herein did not furnish "individuals to perform agricultural labor for another person" and are therefore not "crew leaders" within the meaning of § 3121(*o*). Because the Court has concluded that the family heads did not satisfy the first requirement of the section, the Court need not decide whether the family heads paid their families within the meaning of the second requirement of § 3121(*o*).

For the foregoing reasons, it is accordingly

ORDERED that the plaintiffs William W. Sachs and Dorothy A. Sachs recover from the defendant the United States of America the sum of One Thousand Eight Hundred Seventy-Three Dollars and Fifty-Seven Cents ($1,873.57), together with interest thereon as provided by 28 U.S.C. § 2411, and 26 U.S.C. § 6621(a). This sum represents the taxes paid on payments to the migrants for work performed in connection with the cultivation and harvesting of the cucumber crop.

IT IS FURTHER ORDERED that the plaintiffs' request for a refund for taxes paid on payments to the migrants for work performed in connection with the cultivation and harvesting of the sugar beet and tomato crops should be, and hereby is, denied.