**Raymond J. DONOVAN, etc., Plaintiff,**

v.

**Ernest GILLMOR, et al., Defendants.**

**No. C 79–163.**

United States District Court,
N. D. Ohio, W. D.

March 19, 1982.

Benjamin T. Chinni, U. S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

John P. Rice, Jr., Cleveland, Ohio, for defendants.

## MEMORANDUM and ORDER

WALINSKI, District Judge:

This matter is before the Court on plaintiff's motion to amend complaint and defendants' response thereto, the Motion of ABLE to intervene as *amicus curiae* and defendants' response thereto, and cross motions for summary judgment. The Court retains jurisdiction pursuant to the Fair Labor Standards Act of 1938, (hereinafter FLSA) as amended, 29 U.S.C. § 201 *et seq.*

The facts of this lawsuit involve the operation of a farm by defendants, in which migrant farm labor is employed by defendants in the functioning of their farm. Plaintiff claims that defendants, in operating their business, have violated the child labor provisions of the FLSA, and seeks to permanently enjoin any and all future violations of said Act. Defendants have denied any coverage under the FLSA, as well as all violations alleged thereunder.

The first motion to be addressed by this Court is plaintiff's motion for leave to amend the complaint. In seeking to amend its complaint, plaintiff proposes to add a third partner of the named defendants as a party defendant, in addition to adding a corporation which was formed after the start of this lawsuit and is currently running the farm in question. Other new violations, concerning recordkeeping provisions of the FLSA are sought to be included in the amended complaint, in addition to a second basis for asserting the FLSA's coverage over the defendants' business. The information upon which plaintiff bases these new allegations and seeks to join new parties was not acquired until interrogatories were answered on October 31, 1980, and updated on February 5, 1981, with supplemental material submitted on February 11, 1981. The remaining source of information

was constituted by the deposition of defendant Peter Gillmor, partially completed on February 5, 1981 and not signed until April 3, 1981.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend a complaint only by leave of Court when a responsive pleading has been filed in the case. In the case *sub judice*, with a responsive pleading having been filed by defendant, Rule 15(a) comes into play. Rule 15(a) further provides that "leave shall be freely given when justice so provides." This mandate was strongly reaffirmed by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The general practice of the Federal Courts is to liberally allow amendments of the pleadings. 3 *Moore's Federal Practice* ¶ 15.08[2]. In accordance with these principles, a Court should allow a party to amend its pleading, unless there is evidence of bad faith, undue delay, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment, or futility of the amendment. *Foman v. Davis, supra*, at 182, 83 S.Ct. at 230.

Plaintiff asserts that there was no undue delay involved, as the new information was not received until two months prior to the filing of the motion for leave to amend. It is further stressed by plaintiff that this is not an attempt at delay, but merely a desire that the case be fully and completely litigated on its merits. Lastly, plaintiff argues that although defendants will have to file an answer to the amended complaint and respond to additional discovery, that such facts do not rise to the level of undue prejudice.

Defendants oppose plaintiff's motion for leave to amend on a number of grounds. First, they claim that it would be highly prejudicial to defendants to permit plaintiff to amend its pleadings two years after the action was filed to assert a new cause of action which could previously have been presented based on plaintiff's investigation of defendants' farm in 1978. Defendants additionally claim that they will be prejudiced by the joinder of the corporate defendant, an entity that was not formed at the start of this lawsuit. Lastly, it is argued that any allegation against the corporate defendant would be barred by the two year statute of limitations period delineated in § 6 of the Portal-to-Portal Act of 1947. For the reasons to follow, the Court disagrees with defendants' assertions and will grant plaintiff leave to amend its complaint.

In considering the reasons enumerated by plaintiff for its motion for leave to amend, it is evident that to deny plaintiff's motion would not be in the interest of justice. *See: Foman v. Davis, supra*. Based on plaintiff's assertions that the new information was obtained through the discovery process, leave to amend could be granted. However, the Court must examine any objections propounded by defendants and determine their validity, if any.

Defendants submit that they would be prejudiced if the Court allows plaintiff to amend its pleadings. This contention is grounded in the fact that the motion for leave to amend was filed two years after the institution of the lawsuit, and that the newly asserted allegations could have been ascertained by plaintiff during its July, 1978, investigation of plaintiff's farm.

In examining this contention, it is evident that the mere fact that a party seeks to amend its pleading at a late stage of the litigation is not enough to bar such amendment, without a specific showing that the other party is prejudiced. *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973). The original trial date for this case was vacated, and a new date has not yet been scheduled. Therefore, defendants cannot argue that the amendment was untimely filed in light of an impending trial. With no time pressure in existence, defendants' claim of prejudice is doubtful. Prejudice to defendants, if any, would be minimal at this stage of the proceedings, with no trial date having been set.

Defendants further assert that the new allegations should have been discovered during plaintiff's investigation of defend-

ants' farm in July, 1978. Plaintiff has stated that such information did not come to light until it conducted discovery. Defendants have not demonstrated how and why this information might have been uncovered in the July, 1978, investigation other than merely making this assertion. In addition, they have not specifically demonstrated how they will be prejudiced, especially considering that no firm trial date has been set.

To bar a party from filing an amendment to his pleadings, some specificity of prejudice must be demonstrated. The rule allowing for the liberal amendment of pleadings must overcome defendants' claims of prejudice, where defendants have failed to demonstrate their prejudice, and have made no showing of plaintiff's misconduct or fault other than broadly asserting that the information obtained by plaintiff should have been discovered earlier.

It is also contended by defendants that plaintiff's addition of the corporation as party defendant, a corporation formed after the start of the lawsuit, would prejudice defendants. It is asserted that plaintiff conducted an investigation of defendants' farm in July, 1978, and that the records of the Ohio Secretary of State reveal that a corporation composed of the Gillmor family was incorporated under the laws of Ohio on March 14, 1979. Defendants claim that plaintiff should have been aware of this relationship and cannot now join this corporate party at this late date.

■ Plaintiff claims that all the information that it bases the allegations on was acquired through discovery in early 1981. Defendants have no proof to the contrary, other than their unsupported assertion that "[p]laintiff was aware or should have been aware of this relationship ..." A close look at the chronological sequence involved shows that the corporation was formed only six days prior to the filing of the complaint, and a full nine months after plaintiff's investigation. To claim that plaintiff, under this time sequence, should have known of the existence of the corporation is a bit severe. In addition, there is absolutely no evidence that plaintiff should have known of the corporation when it conducted its investigation, nine months prior to the formation of the corporation. Consequently, the Court finds no prejudice to exist.

Lastly, defendants contend that any allegations made against the new party corporation for injunctive relief would be barred by the two year statute of limitations period in § 6 of the Portal-to-Portal Act of 1947. Assuming *arguendo*, that the limitations period did apply to the corporation, allegations against the corporation would still not be time barred.

Rule 15(c) states in relevant part:

Whenever the claim of defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom the claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The analysis of the Court will proceed as to whether the provisions of Rule 15(c) have been met as to the corporation.

The first requirement in Rule 15(c) is that the corporation have received such notice of the institution of the suit that it would not be prejudiced in maintaining its defense on the merits. According to defendants' assertion, the corporation was formed on March 14, 1979, some six days prior to the filing of the complaint herein and nine months subsequent to plaintiff's investigation. Although the corporation was in existence prior to the filing of the complaint, any notice of its formation to plaintiff would have been difficult, due to the close proximity in time to the filing of the complaint.

In defendants' opposition to plaintiff's motion to amend, it is asserted that the corporation is composed of the Gillmor family. With the original named defendants in this lawsuit being members of the Gillmor family, and composing part of the corporation, defendants cannot now assert that the corporation had no notice of the institution of the lawsuit.

The second requirement is that the corporation knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. In the facts *sub judice*, defendants knew that their farm was under investigation for FLSA violations and that they, as operators of the farm, would ultimately be liable for any deficiencies therein. Therefore, when the corporation was formed and assumed operation of the farm, it became liable for violations occurring at the farm. With the named defendants on notice as to the lawsuit, and with such defendants constituting part of the corporation, the corporation should have known that the action would have been brought against it. The original complaint alleges violations of the FLSA from July 19, 1978, onward, and therefore the acts alleged in the amended complaint arise out of allegations occurring during the same time frame as was set forth in the original complaint. Under these circumstances, assuming *arguendo*, that the two year limitations period applies, then the relation back provisions of Rule 15(c) applies, and take the addition of the corporate defendant out of the period.

After applying the standards enunciated in Rule 15 to the facts herein, the Court is convinced that the plaintiff has met the requirements imposed on it. For this reason, leave to amend the complaint is granted.

Advocates for Basic Legal Equality (hereinafter ABLE) have filed a motion to intervene in this case as *amicus curiae*. Defendants have opposed such motion. "The acceptance of *amicus* briefs is within the sound discretion of the Court." *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

In *Strasser* it was also stated that absent joint consent of the parties, acceptance of an intervenor as *amicus curiae* should be allowed only sparingly, unless the *amicus* has a special interest, or unless the Court feels that existing counsel need assistance. *Id.*

The Court will note that ABLE does currently represent clients who have filed lawsuits pursuant to the FLSA, in addition to two suits concerning FLSA claims in which minimum wages for migrants working in pickles are in dispute. However, the Court does not find these circumstances to rise to the level of "special interest" that would justify certification of ABLE to the status of *amicus curiae*. More importantly, the Court is of the opinion that counsel for both parties are more than adequately representing the interests of their clients and that counsel do not need supplementing assistance. Consequently, ABLE's motion to intervene as *amicus curiae* is denied.

The last issue to be resolved by the Court concerns the cross-motions for summary judgment filed by the parties. The identical issue is raised in both motions, that being whether the migrant farm workers engaged in the harvesting of defendants' cucumber crop are employees within the meaning of the FLSA. If such workers are determined not to be classified as employees under the FLSA, then the FLSA has no application to this case.

Defendants' motion for summary judgment is based entirely on this Court's holding in *Sachs v. United States*, 422 F.Supp. 1092 (N.D.Ohio 1976). In *Sachs*, this Court held that migrant farm workers harvesting cucumbers were not considered to be employees, but rather, independent contractors. The facts of *Sachs* concerning the characteristics of the employment of the migrants was very similar to the facts herein. Nonetheless, *Sachs* is distinguishable from the situation *sub judice*, and therefore is inapposite and has no *stare decisis* value.

The decision by this Court in *Sachs* that the migrant workers harvesting cucumbers

were not employees involved the application of I.R.C. § 3121(b)(16), a statutory exemption that excluded sharecroppers from coverage under the Internal Revenue Code. The *Sachs* holding relied on by defendants was directly based on Rev.Rv. 55.538, which interpreted I.R.C. § 3121(b)(16). The case *sub judice* is being pursued under the FLSA, not the Internal Revenue Code. Therefore, it is the FLSA and the caselaw interpreting such that governs the resolution of this issue.

 Defendants contend that a migrant worker cannot be considered an employee for the purposes of the FLSA and at the same time be exempted from such status for the purposes of the Internal Revenue Code. However, defendants cite no authority for this proposition. When the purposes behind the respective legislation are examined, it becomes readily apparent that persons can be treated differently depending on the law involved. The purposes of the Internal Revenue Code are to levy and collect taxes. The intent of the FLSA is to "eliminate low wages and long hours and free commerce from the interference arising from production of goods under conditions that were detrimental to the health and well being of workers." *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976), quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1941). It is evident that depending on the statute involved and its purpose, an individual's status can vary accordingly. *See: Sachs, supra,* 422 F.Supp. at 1095.

Lastly, a close examination of the Court's opinion in *Sachs* demonstrates that the holding therein was limited to facts applied to the Internal Revenue Code:

Application of the facts of this case to the various tests which have been devised for the determination of this relationship, see, e.g. *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *Avis Rent A Car System v. United States*, 503

F.2d 423 (2d Cir. 1974); 26 C.F.R. § 31.-3121(d)–1(c), satisfies the Court that the migrant farm workers herein were employees "under the usual common law rules". I.R.C. § 3121(d)(2).

*Sachs, supra* at 1095. In actuality, the migrants were considered employees under the common law definition as this was enunciated in a line of cases, but the holding of *Sachs* was based on a section of the I.R.C. and a revenue ruling interpreting said section. For these reasons, this Court's ruling in *Sachs* is irrelevant and inapposite to the issue under consideration herein.

 The common law concepts of employee and independent contractor have been rejected by the Courts as yardstick for the determination of coverage under the FLSA. *Usery v. Pilgrim Equipment, supra.* Rather, five factors have been established as guidelines to making the determination of whether a worker is an "employee" under the FLSA. They are: degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required. These criteria evolved out of the 1947 trilogy of cases decided by the Supreme Court which answered the question of who is an employee. *U. S. v. Silk*, 332 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *See: Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *See also: N. L. R. B. v. Hearst*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

*Rutherford* is the only one of the aforementioned decisions that involves the FLSA. The five factor criteria to be employed by this Court was first enunciated in *U. S. v. Silk, supra*. Although *Silk* and these other cases dealt with different but similar statutes, the Court in *Rutherford* stated, "[d]ecisions that define the coverage under the Labor and Social Security acts are persuasive in the consideration of a similar coverage under the Fair Labor Standards Act." 331 U.S. at 723, 67 S.Ct. at 1473. Consequently, the Court will apply the five factor test elucidated in *Silk*.

Before the *Silk* test can be applied by the Court, there must be an indepth examination of the characteristics surrounding the migrants' working relationship with defendants. The following facts were gleaned from the deposition of Peter Gillmor: defendants own or rent all of the land used to plant cucumbers; defendants own all of the mechanical equipment, including tractors, cultivator, plows sprayers and portable irrigation system used to plant and cultivate the cucumber crop; such equipment is expensive, with a tractor, for example, costing $28,000; defendants decide when to plow as well as when and where cucumbers will be planted; defendants pay for the cucumber seed, decide whether to use fertilizer, and select, purchase and decide whether to use insecticides; defendants also pay for the fertilizer, and use their own equipment to apply the fertilizer and pesticides. All of this activity proceeds before the migrants arrive, with the cucumber crop having been planted in the ground prior to the migrants' arrival.

The migrants stay at a camp owned by defendants, with the cost of rent and utilities being borne by defendants; the migrants work on crops other than pickles and continue working on defendants' farm after the pickle crop is harvested; the migrants do other work for defendants during pickle season, and were paid for work done on crops other than pickles; no written contracts existed between the parties, with the migrants not having to pay a fee for the privilege of harvesting pickles; none of the fertilizer or insecticide is applied by the migrants, although the migrants work exclusively for defendants.

The migrants provide no tools other than their own hoes; payment is made by defendants, with the migrants being paid fifty percent of the value of the crop they pick; however, the migrants have no control over the price charged for the pickles; the migrants neither own nor rent any of the cultivated land, nor do they own any of the capital equipment used in the farming operation, or their housing. The migrants can never become the owners of the land, equipment or housing as a result of their work for defendants. These facts will now be applied to the five step test to determine the issue *sub judice*.

## I. CONTROL

In observing the totality of the business relationship between defendants and migrants, it is evident that the defendants have a substantial amount of control over the working conditions and the work performed by the migrants. Defendants have the entire say on the cucumber crop. They make all decisions and are fully responsible for the cultivation, fertilization and insect prevention of the cucumber crop. The crop is fully planted and in the ground by the time the migrants arrive on the farm. The farm owners determine the size of the crop. They pay the migrants directly and with their own checks. The migrants have absolutely no control over the price paid for the pickle crop, and must sell only to the selected buyer at defendants' stated price. In addition to these facts, the migrants do other work for defendants during pickle season, and were paid for work done on crops other than pickles. These facts demonstrate the overwhelming control assumed by defendants in their pickle operations. The most significant conclusion drawn from these facts is that the migrants cannot control very much of the conduct of their business and responsibilities independent of defendants. All meaningful aspects of this business relationship: price, crop cultivation, fertilization and insect prevention, payment, right to deal with buyers, and work assignments on other crops, are controlled by defendants.

## II. AMOUNT OF INVESTMENT

The investment contributed by the migrant workers is nearly zero. Investment in this instance is understood to be large expenditures, such as risk capital, or capital investments, and not negligible items or labor itself. *Wirtz v. Lone Star Steel*, 405 F.2d 668 (5th Cir. 1968); *Mednick v. Albert Enterprises*, 508 F.2d 297 (5th Cir. 1975); *Usery v. Pilgrim Equipment, supra*. The

only capital investments provided by the migrants are their hoes. Everything else, from farm equipment, land, seed, fertilizer, insecticide to the living quarters of the migrants is supplied by the defendants. There can be no argument whatsoever that the migrants have any investment in defendants' farm operation other than their own time and labor.

## III. OPPORTUNITY FOR PROFIT OR LOSS

Any opportunity for the migrants to gain a profit is directly correlated to the amount of pickles that they pick. The more pickles they pick, and the more efficient they are with their labor, the greater their income. In *Rutherford Food Corp. v. McComb, supra*, the Supreme Court found that "[w]hile profits . . . depended upon the efficiency of their work, it was more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." *Id.* 331 U.S. at 730, 67 S.Ct. at 1476.

In this instance the migrants are engaged in piecework for defendants. They are paid according to the actual amount of pickles picked. In their employment role, the migrants do not have the opportunity to exercise "the initiative, judgment or foresight of the typical independent contractor". They have no input regarding the quantity or price of the pickles, nor do they have a choice as to who to sell the pickles to. The cultivation of the crop is controlled entirely by defendants. The migrants exercise no entrepreneurial discretion whatsoever. Other than working faster or longer hours, the migrants cannot increase their "profits". Upon closer examination, this profit is nothing more than wages paid for the total number of pickles picked. The Court will not allow form to triumph over substance. The "profits" of the migrants must be seen for what they really are: wages paid for pickles picked.

As to a possible loss, any such circumstance would only constitute a reduction in money earned by the migrants. This diminution cannot properly be termed a loss, because the migrants have not invested anything in which to lose. The only investment made is time, and there is a return on this in the form of the pickles picked and the accompanying payment. If the pickle crop is bad, the loss incurred by the migrant would be a loss in terms of opportunities to pick pickles. However, this loss translates into a loss of wages, and not a loss of profit. This analysis demonstrates that no profit or loss is at stake for the migrant workers. At stake are wages only.

## IV. DEGREE OF SKILL REQUIRED

Farm work performed by migrant workers is unskilled labor. There can be no argument to the contrary on this issue. No special training or experience is necessary to perform the task of picking pickles. The fact that this migrant labor is unskilled is borne out by the allegations that children under the age of 12 were in the fields working.

## V. PERMANENCY

The migrants remain at defendants' farm for the entire season, working for as long a period as work is available to them. Defendants did admit that the migrants do stay on after the end of the pickle season and perform services in connection with other crops.

Harvesting of crops is a seasonal industry, without much permanence beyond the harvesting season. However temporary the relationship may be, it is nevertheless true that the relationship is permanent to the extent that the migrants work only for defendants during the season. The intermittent nature of the employment is not always significant, *Silk, supra*, 331 U.S. at 718, 67 S.Ct. at 1470, especially where there are other indicia of permanency. In *Silk*, the employees involved therein worked only as regularly "as a man has to when he has to eat", and some of the workers were "floaters who came to the yard only intermittently." *Id.* at 706, 67 S.Ct. at 1464. The Court is of the opinion that the exclu-

sive, season long relationship between the migrants and defendants is sufficient indicia of permanency in an industry such as harvesting, an industry that is inherently seasonal.

"Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Rutherford Food Corp. v. McComb, supra*, 331 U.S. at 729, 67 S.Ct. at 1476. The facts, as applied under the five prong test denominated in *Silk*, lead the Court to the inescapable conclusion that the migrant workers were employees within the coverage of the FLSA. Defendants managed all aspects of the farm operation; the migrant workers contributed no capital investment whatsoever except their hoes, there was no opportunity for profit or loss on the part of the migrants; rather, their stake in the venture was wages; there was no degree of skill required to do the labor, and the relationship possessed indicia of permanency despite the fact that the harvesting industry is inherently seasonal.

For the foregoing reasons,

IT IS ORDERED that plaintiff's motion for leave to amend its complaint is granted;

IT IS FURTHER ORDERED that the motion of ABLE to intervene as *amicus curiae* is denied;

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied;

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted.