Jose Jesus SANCHEZ, et al., Plaintiffs,

v.

Tom OVERMYER, et al., Defendants.

No. 3:92CV7444.

United States District Court,
N.D. Ohio, W.D.

Oct. 21, 1993.

**1185**

Randall C. Marshall, Advocates For Basic Legal Equality, Inc., Toledo, OH, for plaintiffs.

Jodie Lee Stearns, Mitchell, Sterns & Hammer, Bowling Green, OH, for defendants.

## MEMORANDUM AND ORDER

JOHN W. POTTER, Senior District Judge:

This matter is before the Court on plaintiffs' motion for partial summary judgment, defendants' opposition, and plaintiffs' reply. In their amended complaint, the plaintiffs have alleged violations of the Migrant and Seasonal Agricultural Worker Protection Act (AWPA), 29 U.S.C. § 1801, et seq., and the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3101, et seq. The undisputed facts reflect that defendants Tom and Sandra Overmyer own and operate a farm and a roadside market in Sandusky County, Ohio. Plaintiffs Jose Jesus and Petra Sanchez are farm workers from Texas who worked at the Overmyer farm for several years.

Plaintiffs move for summary judgment against the Overmyer defendants for violations of the FICA for failing to withhold and pay social security taxes from the individual earnings of Jose Jesus and Petra Sanchez and for failing to pay the employer's share of social security taxes for each of them. In addition, plaintiffs move for summary judgment against the Overmyers on several violations of the AWPA, namely that they failed to disclose the terms and conditions of employment in writing; failed to make, keep and preserve accurate wage statements; failed to provide accurate, itemized written wage statements to each worker; failed to pay wages owed when due; violated the terms of the working arrangement; and utilized the services of an unauthorized farm labor contractor to provide housing. Plaintiffs move for summary judgment on their AWPA claims against defendant Kerry Gomez for unauthorized control of farm worker housing and for failing to identify such housing to the Department of Labor. Plaintiffs further seek summary judgment on their claims that all defendants violated the AWPA by providing unlicensed housing and by failing to post or disclose the terms and conditions of occupancy of housing in writing.

Under the Federal Rules of Civil Procedure, summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The Supreme Court has recently stated that the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242, 251] 106 S.Ct. 2505, 2512 [91 L.Ed.2d 202] (1986).... In reviewing a motion for summary judgment, however, all inferences " 'must be viewed in the light most favorable to the party opposing the motion.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, [475 U.S. 574, 588] 106 S.Ct. 1348, 1356–57 [89 L.Ed.2d 538] (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 993, 8 L.Ed.2d 176] (1962)).

*Ralph Shrader, Inc. v. Diamond International Corp.*, 833 F.2d 1210, 1213 (6th Cir. 1987).

*Matsushita* demands only that the non-moving party's inferences be reasonable in

order to reach the jury, a requirement that was not invented, but merely articulated in that decision. If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted.

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* — U.S. —, —, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (footnote omitted).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, only disputes of facts affecting the outcome of the suit under the applicable substantive law will preclude the entry of summary judgment. *Id.* A moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 324–325, 106 S.Ct. at 2554. Where the moving party has met its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." ... Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts

showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The Court begins with an examination of plaintiffs' third cause of action wherein it is alleged that the Overmyer defendants violated the FICA by (1) failing to withhold and pay the federal social security taxes from the earnings of Jose Jesus and Petra Sanchez; and (2) by failing to pay the employer's share of social security taxes for each of them.

■ It is not disputed that, with the exception of the work of pickle [1] harvesting, the Overmyers are subject to the terms of the FICA with regard to their employment of Jose Jesus and Petra Sanchez. It is also uncontroverted that Jose Jesus and Petra Sanchez's earnings were frequently grouped together and paid in the name of one or the other. The taxes were withheld on the total amount and paid in the name of whomever the check was issued. By its terms, the FICA provides that taxes are imposed on the income of every *individual* employee. *See* 26 U.S.C. §§ 3101, 3102, 3111 (Internal Revenue Code). In light of this requirement, the Court finds that the practice of grouping the wages of Jose Jesus and Petra Sanchez and not separately deducting and paying the applicable tax for each individual violated the FICA. *Colunga v. Young,* 722 F.Supp. 1479, 1487 (W.D.Mich.1989), *aff'd,* 914 F.2d 255 (6th Cir.1990); *Cruz v. Vel–A–Da, Inc.,* No. 3:90CV7087, January 8, 1993 Memorandum and Order. Since there are no material facts in dispute, plaintiffs are entitled to summary judgment on these claims.

■ Plaintiffs also assert that a FICA violation arises from work which they performed on the Overmyers' pickle crop. It is not disputed that FICA taxes were neither deducted nor paid for plaintiffs' work harvesting pickles. The Overmyers instead assert that plaintiffs were share farmers in performing this work and that, therefore, defendants were not required by the FICA to deduct and pay the tax. In support of this contention, defendants rely on *Sachs v. United States,* 422 F.Supp. 1092 (N.D.Ohio 1976).

---

1. Although the crop is actually cucumbers, this is the term commonly used in the business.

Section 3121(b)(16) contains the share farming exception. That section defines the exempted activity as:

> service performed by an individual under an arrangement with the owner or tenant of land pursuant to which—
>
> (A) such individual undertakes to produce agricultural or horticultural commodities ... on such land,
>
> (B) the agricultural or horticultural commodities produced by such individual, or the proceeds therefrom, are to be divided between such individual and such owner or tenant, and
>
> (C) the amount of such individual's share depends on the amount of the agricultural or horticultural commodities produced[.]

The undisputed facts in the instant case reflect that plaintiffs were paid one-half of the value of the pickles which they harvested. Their only other involvement with the crop was blocking,[2] for which they were paid separately. The issue is then whether the relationship by which plaintiffs were paid one-half the value of the pickles that they picked falls within the share farming exception. The *Sachs* decision notwithstanding, the Court finds that it does not.

█ In *Sachs* the court first found ambiguity in the phrase "undertakes to produce" and then conducted a review of the legislative history of Section 3121(b)(16) and Rev.Rul. 55–538 to conclude that activity similar to that in the instant case fell within the exception. This Court holds that any ambiguity which may be contained in the phrase "undertakes to produce" is insufficient to support defendants' position. Merely picking the crop in exchange for a portion of the proceeds cannot be included within the phrase "undertakes to produce" and therefore falls outside the definition contained in Section 3121(b)(16). Notably, subsequent to the decision in *Sachs*, the Internal Revenue Service issued a Revenue Ruling on all fours with the Court's holding herein:

> The reference to individuals who operate farms demonstrates that in order to be considered self-employed an individual must be the operator of a farm. This is further evidenced by the statutory language of section 3121(b)(16) of the Code that provides the exception from employment applies to one who "undertakes to produce" a crop. The typical share farmer has responsibility for a wide range of farming activities, including participation in the initial planning for the operation, and incurs out-of-pocket business-related expenses, as shown by the facts of Rev.Rul. 55–538. On the other hand, the migrant workers in the instant case are hired to perform only specific tasks. They do not undertake to produce the crop and they incur no business expenses. They are not the operators of the farm merely because they perform certain tasks relating to the cultivation and harvest of the cucumber crop.

Rev.Rul. 85–85, 1985–1 C.B. 332. The Court agrees with the analysis set forth in Rev.Rul. 85–85 and disagrees with *Sachs*. There being no disputed facts material to whether plaintiffs fall within the share farmer exception, plaintiffs are entitled to summary judgment on this point.

█ Plaintiffs assert that the Overmyer defendants violated the AWPA. It is undisputed that the Overmyers, as agricultural employers, are subject to the AWPA. As this Court has previously held in this case, failing to pay the employer's share of an agricultural worker's FICA tax violates 29 U.S.C. § 1822(a), and thus plaintiffs are entitled to summary judgment on this AWPA claim. Plaintiffs have failed, however, to convince the Court that this conduct violates Section 1822(c) and their motion will therefore be denied on that point.[3]

---

2. Blocking is the process of thinning the cucumber plants to a uniform spacing.

3. In its prior ruling, the Court concluded that the term "wage" contained in Section 1822(b) included, by implication, the employer's share of a migrant worker's FICA tax. Plaintiffs have not provided compelling authority for their contention that a "working arrangement made" by an employer, as that phrase is used in Section 1822(c), includes the payment of FICA taxes. This Court is inclined to read Section 1822(c) as relating to express terms of a working arrangement as opposed to those implied by law.

Plaintiffs allege that the Overmyer defendants violated the disclosure provisions contained in 29 U.S.C. § 1821(a). Section 1821(a) places an affirmative duty to disclose certain enumerated information: "Each ... agricultural employer ... which recruits any migrant agricultural worker shall ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment: ...." 29 U.S.C. § 1821(a). The undisputed facts reveal that the Overmyers did not comply with the written disclosure requirements of Section 1821(a). Plaintiffs therefore move the Court to enter summary judgment on this point. Defendants assert, however, that they never recruited plaintiffs and that Section 1821(a) does not apply to them. The plain language of the statute and the decision in *Cruz* (January 8, 1993 and June 9, 1993 orders) support defendants' contention that Section 1821(a) only applies to those who actually recruit workers. The issue for the Court, then, is whether the activities of the Overmyer defendants rise to the level of recruiting.

In the brief in support of their motion for partial summary judgment, plaintiffs set forth the facts which they deem relevant and which are taken from deposition testimony and affidavits. Plaintiffs' summary of the facts contains the following:

1. Plaintiffs Jose Jesus and Petra Sanchez are farm workers from Texas who worked for defendants Tom and Sandra Overmyer ("Overmyers") for several years, including 1989.

2. While in Texas in the Spring of 1989, plaintiffs had a telephone conversation with defendant Tom Overmyer during which plaintiffs were offered a job; it was confirmed that plaintiffs would work for the Overmyers and when they should travel to Ohio.

3. The Overmyers hired Jose Jesus and Petra Sanchez in 1989 and the Sanchez family travelled from Texas to Ohio to work for the Overmyers.

. . . . .

5. The Overmyers are "agricultural employers" as that term is defined in 29 U.S.C. § 1801(2), and they "employed" Jose Jesus and Petra Sanchez as that term is defined in § 1802(5).

. . . . .

7. The Overmyers did not give anything in writing to plaintiffs regarding the terms and conditions of employment.

Plaintiffs' brief in support at pp. 1–2 (citations omitted). Plaintiffs assert that the act of hiring the plaintiffs while they were still in Texas constituted recruitment under the Act.

The Court finds the analysis of Magistrate Judge James G. Carr in the *Cruz* case to be instructive:

Defendant observes that § 1821(a) uses the term "recruit," while § 1821(b), in contrast, applies to those who "employ" migrant workers. Plainly, the drafters envisioned different situations when these two provisions were enacted. The legislative history demonstrates that § 1821(a) like its predecessor, the Farm Labor Contractor Registration Act, was intended to apply in cases where a contractor exaggerates conditions of employment when he recruits workers at their home base. H.R.Rep. No. 97–885, 97th Cong., 2nd Sess., *reprinted in,* 1982 U.S.Code Cong. & Admin.News 4547, 4547–4548.

*Cruz,* No. 3:90CV7087, January 8, 1993 Memorandum and Order at p. 6.

Plaintiffs direct the Court to *Contreras v. Mt. Adams Orchard Corp.,* 744 F.Supp. 1007 (E.D.Wash.1990), for the proposition that "the term 'recruit' and its derivatives shall be interpreted as meaning 'to hire or otherwise obtain or secure the services of,' and shall include all pre-employment discussions that relate to a worker's employment." *Id.*

This Court is reluctant to adopt such a broad definition of the term "recruit." Section 1821(b) makes requirements of employers, as opposed to recruiters:

Each farm labor contractor, agricultural employer, and agricultural association which employs any migrant agricultural worker shall, at the place of employment, post in a conspicuous place a poster provided by the Secretary setting forth the rights and protections afforded such workers under this chapter, including the right

of a migrant agricultural worker to have, upon request, a written statement provided by the farm labor contractor, agricultural employer, or agricultural association, of the information described in subsection (a) of this section. Such employer shall provide upon request, a written statement of the information described in subsection (a) of this section.

29 U.S.C. § 1821(b). In *Cruz,* Magistrate Judge Carr explained that:

> Plaintiffs interpretation would render § 1821(b) utterly superfluous. If merely accepting a migrant worker's offer to perform services and explaining the terms of employment constitute recruitment, it is difficult to imagine a situation where an employer would not also be a recruiter. If that is the case, section (b) serves no purpose. If employment and recruitment were intended to apply to [the] same activities, the posting provisions would have been eliminated or incorporated into section (a). But, because the drafters provided different requirements for recruitment and employment, that distinction must be respected.

*Cruz,* No. 3:90CV7087, June 9, 1993 Memorandum and Order at pp. 6–7. The Court finds that plaintiffs' proposed definition of the term "recruit" in the instant case suffers from the same problem as the one offered in *Cruz.* It is contraintuitive to use "recruit" as a synonym for "employ" where two consecutive statutory subsections impose different requirements depending on whether the activity is recruiting or employing.

■ Plaintiffs cite *Bueno v. Mattner,* 829 F.2d 1380 (6th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988), in support of their position. This Court finds the reliance upon *Bueno* misplaced. In that case, the Court of Appeals was considering the applicability of the family farm exception, and specifically, whether the activities of a third party on behalf of the defendants amounted to farm labor contract-

ing activities. *Id.* at 1384. The district court in *Bueno* concluded that since the defendants had talked to every plaintiff before securing their services, defendants had engaged in recruiting. *Bueno v. Mattner,* 633 F.Supp. 1446, 1465 (W.D.Mich.1986), *aff'd,* 829 F.2d 1380 (6th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988).[4] This Court declines to adopt an expansive reading of the term "recruiting" which would result in rendering Section 1821(b) a nullity.

It is not disputed that plaintiffs had worked for the Overmyers for several years prior to 1989 and must have therefore been familiar with the employment which they were entering into in 1989. A telephone call between plaintiffs and Tom Overmyer took place while plaintiffs were still in Texas. There is no evidence as to which party initiated the call; however, the general course of dealing which Tom Overmyer described was that workers would call during the winter months to say if they wanted to come back the following summer and that if he did not hear from them by March 1 he would assume they were not going to come back. In any event, plaintiffs were offered a job while they were still in Texas, which they accepted. Inasmuch as plaintiffs had previously been employed with the Overmyers for several years, the Court finds these facts to be analogous to the *Cruz* case, wherein the workers simply arrived at the farm looking for work. This is in contrast to an actual recruiting scenario in which migrant workers might be solicited to enter into an employment relationship without the ability to observe the conditions of employment. Without offering a definitive definition of the term "recruiting," the Court holds that the activity reflected by the facts in this case falls short and that the Overmyer defendants did not, as a matter of law, violate Section 1821(a) because they did not recruit the plaintiffs.

■ Plaintiffs further allege that the Overmyers violated Section 1821(d)(1). That section provides that:

4. That portion of the district court's opinion was not before the Sixth Circuit, and it is noteworthy that the Court of Appeals distanced itself from the more expansive reading of the Act by the district court. *Bueno,* 829 F.2d at 1384 ("We

disagree with the court's holding that these gratuitous recommendations were also farm labor contracting activities performed on defendants' behalf." *Id.* at n. 3).

Each ... agricultural employer ... which employs any migrant worker shall—

(1) with respect to each such worker, make, keep, and preserve records for three years of the following information:

(A) the basis on which wages are paid;

(B) the number of piecework units earned, if paid on a piecework basis;

(C) the number of hours worked;

(D) the total pay period earnings;

(E) the specific sums withheld and the purpose of each sum withheld; and

(F) the net pay;

29 U.S.C. § 1821(d). The ledger sheets which purportedly comply with Section 1821(d) have been attached as exhibits. Upon a review of those exhibits, the affidavit of Sandra Overmyer and her deposition testimony, the Court finds that there is no genuine issue of material fact that plaintiffs have established a violation of Section 1821(d). The entries fail to always set forth the basis on which wages are paid, the number of piecework units where this method was used, and the purpose of each deduction. Furthermore, the practice of combining the work of more than one individual would, in and of itself, violate Section 1821(d)(1).

Plaintiffs also allege a violation of Section 1821(d)(2), which requires that the information required in (d)(1) be provided in an itemized, written statement to each such worker. Inasmuch as the records, which are carbon copies of the employees' pay stubs, are insufficient, the copies provided to plaintiffs on their pay stubs must also be insufficient. In addition, as with Section 1821(d)(1), the practice of combining this information for more than one employee would, in and of itself, violate the AWPA. Plaintiffs are therefore entitled to summary judgment on this point.

Plaintiffs next assert that all of the defendants violated housing related portions of the AWPA. The Overmyer defendants undisputedly owned the housing which plaintiffs occupied in 1989. Plaintiffs, however, further assert that defendant Kerry Gomez controlled the housing for purposes of the AWPA and should therefore be jointly liable for any housing violations which may be shown. Section 1823 provides, in pertinent part:

[E]ach person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

29 U.S.C. 1823. The Court is further directed by 29 C.F.R. 500.130(c), which states that:

A farm labor contractor, agricultural employer, agricultural association or any other person is in "control" of a housing facility or real property, regardless of the location of such facility, if said person is in charge of or has the power or authority to oversee, manage, superintend or administer the housing facility or real property either personally or through an authorized agent or employee, irrespective of whether compensation is paid for engaging in any of the aforesaid capacities.

Upon a review of the deposition transcripts and affidavits before the Court, it appears that a factual dispute exists as to what extent defendant Gomez was in control of the housing owned by the Overmyer defendants. Applying the standard set forth above and thereby affording every reasonable inference to defendants, the Court finds that summary judgment may not be entered in favor of plaintiffs with regard to defendant Gomez's "control" of the housing.

Plaintiffs next move for summary judgment on their claim that defendants provided unlicensed housing in violation of 29 U.S.C. § 1823(b)(1). As the Court has found that a material factual issue exists as to whether defendant Gomez was in control of the housing at issue, the Court will consider only whether plaintiffs are entitled to summary judgment on the housing claims as against the Overmyer defendants.

Section 1823(b)(1) provides, in pertinent part, that:

Except as provided in subsection (c) of this section and paragraph (2) of this subsection, no facility or real property may be occupied by any migrant agricultural work-

er unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable safety and health standards. No person who owns or controls any such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site.

Neither of the exceptions referenced in the statute apply to the instant case. Defendants raise two arguments in opposition to the motion for summary judgment on this point. Firstly, they assert that the camp was certified for occupancy prior to plaintiffs' arrival. Secondly, they assert that, under Ohio law, plaintiffs are permitted to house one family in a labor camp prior to certification.

Defendants' first argument is based on their contention that, since all items which had been previously noted by the Ohio Department of Health (ODH) during its initial inspection had been corrected prior to the return inspection, the camp was in fact certified for occupancy. The affidavit of Sandra Overmyer states that she was informed by unnamed representatives of ODH that once all of the violations noted were corrected the camp could be occupied. This contention is simply not supported by the statute, and the Court is unwilling to hold that a representative of the ODH is authorized to create an exception to this section.

Defendants also point out that on May 4, 1989, the inspection report indicated that the camp was recommended for licensure. Although the defendants at least have a colorable argument that the camp may have been certified for occupancy at that point, the undisputed facts reflect that the plaintiffs were occupying the camp prior to May 4, 1989, and the issue is therefore moot.

■ Lastly, defendants argue that, pursuant to a definition contained in Section 3733.41 of the Ohio Revised Code, they were permitted to house one family of migrant agricultural workers in a labor camp prior to certification. While it is true that the definition of the term "agricultural labor camp" under Ohio law refers to two or more families, this determination is simply not relevant to the AWPA violation alleged. The Court finds that the unambiguous terms of Section 1823(b)(1) prohibit the housing of *any* migrant agricultural worker until the camp is certified. Since there are no disputed factual issues material to the determination of this issue, the Court finds that summary judgment for the plaintiffs on this issue is appropriate.

■ Plaintiffs also allege a violation of Section 1821(c), asserting that defendants failed to post or provide complete information on the terms and conditions of occupancy of the housing which plaintiffs occupied. Section 1821(c) provides:

> Each farm labor contractor, agricultural employer, and agricultural association which provides housing for any migrant agricultural worker shall post in a conspicuous place or present to such worker a statement of the terms and conditions, if any, of occupancy of such housing.

29 U.S.C. § 1821(c). Defendants assert that the only rules applicable to the occupancy of the housing were, in fact, posted. Further, defendants argue that the inclusion of the words "if any" underscores the statutory interpretation that defendants should not be required to disclose terms and conditions that do not exist. While the Court would generally agree with that statement, 29 C.F.R. § 500.75(f) sets forth certain information which must be posted or provided in writing. Defendants argue that the camp license provided much of the information required by Section 500.75(f). However, the undisputed facts reflect that the license was not received until after the plaintiffs occupied the housing. This argument by defendants is therefore without merit. Furthermore, as the *Cruz* decision held, reliance upon materials provided by the state does not ensure satisfaction of Section 500.75(f). *Cruz*, January 8, 1993 Memorandum and Order at p. 7. While a factual issue may exist as to whether there were, in fact, any terms or conditions beyond those which were posted, the Court finds that there is no genuine issue of fact as to whether defendants failed to post or provide some or all of the *information required* by regulation in Section 500.75(f). Plaintiffs

**1192**

are therefore entitled to summary judgment on this point.

Plaintiffs next move for summary judgment on their claim that the Overmyer defendants utilized a farm labor contractor not authorized to house workers to control housing in violation of section 1842. As set forth above, the Court finds that there are genuine issues of material fact as to whether defendant Gomez actually controlled the housing at issue. Summary judgment may therefore not be entered for plaintiffs on this issue. Similarly, plaintiffs' motion for summary judgment against defendant Gomez on the claims that she controlled housing without authorization from the DOL and that she failed to identify facilities used to house migrant workers must be denied.

Inasmuch as Section 1854(c) provides for an award of damages for intentional violations of AWPA, plaintiffs move the Court to find that the aforementioned violations were, in fact, intentional. Defendants assert that any violation which may have occurred was not intentional because (1) Sandra Overmyer was simply performing her normal bookkeeping activities in a standard payroll system; (2) Sandra Overmyer posted all posters which were provided by government agencies and the housing rules which she posted were furnished by the ODH; and (3) plaintiffs' occupancy of the housing prior to certification is clearly permitted by Ohio statute.

The Sixth Circuit has examined the intent requirement of Section 1854:

Defendants stress that the statute does require an *intentional* violation and that finding an intentional violation in a case such as this one would effectively eliminate the term "intentional" from the provision. We reject defendants' claim and find in accordance with the Court of Appeals for the Fifth Circuit which has rejected the claim that a defendant may not be held liable where the defendant was unaware of the existence or applicability of the statute. In *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986), the defendants argued that they had no knowledge

of the existence of the FLCRA. The court stated in dicta that that argument was meritless, emphasizing that "[t]he focus under the standard we adopted [in *Castillo*] is on the deliberateness of the conduct involved, not the defendant's knowledge of the Act." *Id.* at 1345 n. 5. It reasoned that the intentional requirement must be construed "so as to further the Act's *remedial* purposes." 765 F.2d at 1345.... Even assuming that they had no knowledge of the MSAWPA and its applicability to them, defendants in the case before us "do not argue that they negligently or carelessly failed to take the steps required to comply with these provisions of the Act." ... We affirm the District Court's conclusion that defendants thus intentionally violated the Act's provisions.

*Bueno*, 829 F.2d at 1386 (footnote omitted). For the same reasons set forth by the *Bueno* court, this Court finds that none of the explanations offered by defendants is sufficient to raise a genuine issue of material fact as to whether the acts of the defendants were intentional. Summary judgment is granted on this issue.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiffs' motion for partial summary judgment be, and hereby is, GRANTED in part and DENIED in part.