CITIZENS NATIONAL BANK, TRUSTEE, v. OLIVE ROGERS CORL ET AL.

(Filed 11 April, 1945.)

**1. Wills § 31—**

It is a cardinal principle in the interpretation of wills that inconsistencies are to be reconciled, if reasonably accomplishable, so as to give effect to each in accordance with the general purpose of the will. Every part of a will is to be considered in its construction, and no words ought to be rejected if any meaning can possibly be put upon them.

**2. Same—**

The intention of the testator is his will, unless at variance with some rule of law or contrary to public policy. This intention is to be gathered from the general purpose of the will and the significance of the expressions, enlarged or restricted according to their real intent. The courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if not also within the intention.

**3. Same—**

To invoke the general rule, in construing a will, that a later provision, repugnant to a former one, will prevail, it is necessary that the repugnant clauses must be wholly inconsistent and incapable of reconciliation.

**4. Wills §§ 33d, 35—**

Where a trust, created by a will for testator's son J. and his family, provided that the income therefrom should be expended by the trustee— (1) to pay all expenses for the preservation of the property, such as

taxes, insurance, repairs, assessments, etc.; (2) to pay O, the divorced
first wife of testator's son J., forty dollars a month as long as she lives
and does not remarry; (3) and to pay the remainder to testator's son J.
during his life, and upon his death to his second wife M. if living, so
long as she shall remain his widow; (4) and, upon the death or remar-
riage of M., to pay all profits, incomes, and proceeds, with the *corpus*, to
the legitimate children of J. as they come of age, the trustee holding
same for such children as are minors until their majority—upon the
deaths of J. and M., the divorced wife O. surviving and not having
remarried, the apparent conflict between (2) and (4) is obviated by the
intent of the testator that so much of the net income as is necessary to
provide the payments to O. under (2), shall take precedence over dis-
bursements to the ultimate beneficiaries.

APPEAL by defendant, Olive Rogers Corl, from *Bobbitt, J.,* at October
Term, 1944, of CABARRUS.

Proceeding under Declaratory Judgment Act to determine proper
disposition of income arising from trust properties.   G. S., 1-255.

After the pleadings had been filed, the case was submitted to the court
for final disposition on "Facts Agreed."

1. It appears that Joe Banks Corl married Olive Louise Rogers in
Pickens, S. C., on 7 August, 1921, and deserted her ten days thereafter.
Criminal proceedings were instituted against the said Joe Banks Corl in
South Carolina for nonsupport, and on 5 December, 1922, his father,
M. J. Corl, of Concord, N. C., agreed in writing to pay to Olive Rogers
Corl $40 per month "during her life or until she remarries," on condition
that she withdraw all criminal proceedings against Joe Banks Corl, and
not institute any other criminal proceedings against him, and not resist
any divorce proceedings which he might institute—"to the faithful and
full performance of which the said M. J. Corl does hereby bind himself,
his heirs, executors, or administrators."

2. It is deduced from the record that divorce proceedings were there-
after instituted by Joe Banks Corl, and that he later married Maude
Smith.

3. On 3 January, 1931, M. J. Corl died, leaving a last will and testa-
ment, the presently pertinent provisions of Item Eight being as follows:

"Eighth: Inasmuch as my son, J. Banks Corl, has not developed such
a sense of responsibility as in my judgment is requisite for the wise use
of large properties and sums of money, I am compelled . . . to limit my
testamentary provisions for his benefits to trust producing such income
as I deem reasonable for his support and for the support of his family.
Now, therefore, in order to provide for the comfort of my said son,
J. Banks Corl, and to secure to him an income for and during his natural
life, I give and devise to the Cabarrus Bank & Trust Company . . . in
trust for my said son, J. Banks Corl, the following real property . . . to

have and to hold the same for and during the natural life of my said son, J. Banks Corl, with remainder to his legitimate children in fee simple. . . . Said trustee is hereby authorized and directed to pay the income therefrom in the following manner:

"1st—To pay all current and incidental expenses for the use and safety of the property . . . such as taxes, insurance, repairs, assessments, etc.

"2nd—To pay to Olive Louise Rodgers, . . . first wife of J. Banks Corl, the sum of Forty Dollars ($40.00) per month so long as she lives and does not remarry and no longer.

"3rd—To pay over the remainder of the net income from said trust property devised or bequeathed to it in trust, to my said son, J. Banks Corl, for and during his natural life; and upon his death pay over the net income to his wife, Maude Smith Corl, if she be then living, and so long as she shall live and remain his widow, and upon her death or prior marriage, to pay all profits, incomes and proceeds, together with the *corpus* of said trust property to the legitimate children of said J. Banks Corl, as they may attain the age of twenty-one, to them their heirs and assigns discharged from any trust. . . . The said trustee shall serve as trustee for the legitimate children of said J. Banks Corl, and make final settlement to each of said legitimate child upon his or her attaining their majority."

4. On 9 August, 1934, Olive Rogers Corl brought suit in the Superior Court of Cabarrus County against the executor of the estate of M. J. Corl and the successor Trustee under his will, for the monthly allowances which had accrued subsequent to the death of the testator, and obtained judgment therefor at the October Term, 1934, in which it was further ordered that the plaintiff, Olive Rogers Corl, recover "$40 on November 1st, 1934, and $40 on the first day of each succeeding month thereafter until the said plaintiff dies or remarries." No appeal was taken from this judgment.

5. Thereafter, on 7 October, 1940, Olive Rogers Corl instituted another action in the Superior Court of Cabarrus County to surcharge and falsify the Trustee's account and to recover the accrued and unpaid amounts due on her prior judgment. All those interested in the trust were made parties, and the minor children of J. Banks Corl appeared by guardian *ad litem.* Judgment was rendered for the plaintiff in this action, and no appeal was taken therefrom. A number of payments have been made on this judgment.

6. J. Banks Corl died on 22 August, 1942, leaving him surviving his widow, Maude Smith Corl, and two minor children, Marshall B. Corl, born 3 March, 1926, and George F. Corl, born 20 November, 1928, the

minor children being represented herein by their duly appointed guardian *ad litem.*

7. Maude Smith Corl, surviving widow of J. Banks Corl, was married again on 18 October, 1943.

8. The accumulated income from the trust estate since 18 October, 1943, and now in the hands of the Trustee, amounts to $1,331.73.

9. Olive Rogers Corl (styled Olive Louise Rodgers in the will of M. J. Corl) is the divorced wife of J. Banks Corl, and at the time of the institution of this proceeding on 10 November, 1943, was living and had not remarried.

Upon the foregoing considerations, the trial court held:

A. That the trust created in Item "Eighth" of the will of M. J. Corl, late of Cabarrus County, is a valid and active trust.

B. That "upon the marriage of Maude Smith Corl on 18 October, 1943," any and all interest of Olive Rogers Corl in the trust estate ceased.

C. That the entire rents, profits and income accruing from and after 18 October, 1943, together with the *corpus* of the estate, are to be held by the Trustee for the use and benefit of Marshall B. Corl and George F. Corl until 3 March, 1947, at which time the Trustee is directed to pay over to Marshall B. Corl one-half of the *corpus* and accumulated income freed from any trust; and thereafter the Trustee is to hold the remaining one-half of the *corpus* and accumulated income of the trust estate for the use and benefit of George F. Corl until 20 November, 1949, at which time the Trustee is directed to pay over to George F. Corl all assets then in the trust estate, *corpus* and accumulated income, discharged from any trust.

From the judgment entered, Olive Rogers Corl appeals, assigning errors.

*No counsel appearing for plaintiff.*
*L. E. Barnhardt and Julien D. Wyatt for defendant, appellant.*
*Hartsell & Hartsell for defendants, appellees.*

STACY, C. J. We have here a second contest involving provisions of the will of M. J. Corl, late of Cabarrus County. For first controversy, see *Corl v. Corl,* 209 N. C., 7, 182 S. E., 725.

The question presently presented is whether the interest of Olive Rogers Corl in the trust estate has been cut short by the happening of events which brings into play other and later provisions of the will. The trial court answered in the affirmative. We are inclined to a different view.

The testator evidently wished his agreement with Olive Rogers Corl to be carried out according to its terms. He had enjoyed the satisfaction and peace of mind which it afforded during his lifetime, and had faithfully performed his engagements thereunder until his death. Notwithstanding the provision in the contract that it should be binding on "his heirs, executors, or administrators," he did not leave it as an open charge against his estate. Provision was made in his will for its observance as the first claim against the income from the trust created "for his (son's) support and for the support of his family," after payment of current expenses incident to the maintenance of the property.

The situation calls to mind a case within the experience of the writer, which is not reported, as it was concluded in the trial court: A father had become guaranty for his son's debts in order to relieve the immediate demands of pressing creditors. Later it was discovered that the son's liabilities were much larger than originally thought. The father was unable to meet the increased demands. Suit was brought to recover on the guaranty contract. When the father was being examined by his counsel, he was asked whether there had been any overreaching or misrepresentation in the creditors' meeting at the time he signed the agreement. His reply was: "I see where you are driving, but let me say this: When I signed that contract I intended to stand by my boy, and I am standing by him yet." Thus the father lost his fortune, but he saved something more important.

So here, M. J. Corl, speaking through his will, says to the court: "Regardless of the enforceability of the contract of 5 December, 1922, when I signed that agreement I intended to stand by my boy and daughter-in-law, and I am standing by them yet." He evidently remembered that performance is the fulfillment of every promise.

True, in the third clause of Item Eight it is provided that upon the happening of a double contingency, which has occurred, "all profits, incomes and proceeds," together with the *corpus* of the trust estate, shall go to the legitimate children of J. Banks Corl, as they may attain their majority, but the testator was here making ultimate disposition of the property after the other provisions contained in this Item had been met. The primary object of the trust was to provide for his son's support "and for the support of his family." The testator regarded his son's first wife as a member of his family.

When originally drawn it was not contemplated that any conflict would arise between the second and third clauses in Item Eight of the will. Subsequent events seemingly have caused them to clash in letter, if not in spirit. Hence, the present request for interpretation and guidance in the administration of the trust. G. S., 1-255.

It is a cardinal principle in the interpretation of wills that incon-
sistencies are to be reconciled, if reasonably accomplishable, so as to
give effect to each in accordance with the general purpose of the will.
*Holland v. Smith,* 224 N. C., 255, 29 S. E. (2d), 888. "Every part of
a will is to be considered in its construction, and no words ought to be
rejected if any meaning can possibly be put upon them. Every string
should give its sound." *Edens v. Williams,* 7 N. C., 31.

The intention of the testator is his will. This intention is to be gath-
ered from the general purpose of the will and the significance of the
expressions, enlarged or restricted according to their real intent. In
interpreting a will, the courts are not confined to the literal meaning of
the words. A thing within the intention is regarded within the will
though not within the letter. A thing within the letter is not within
the will if not also within the intention. *Trust Co. v. Miller,* 223 N. C.,
1, 25 S. E. (2d), 177; *Williams v. Rand,* 223 N. C., 734, 28 S. E. (2d),
247; *Heyer v. Bulluck,* 210 N. C., 321, 186 S. E., 356; *Carroll v. Her-
ring,* 180 N. C., 369, 104 S. E., 892; *Herring v. Williams,* 153 N. C.,
231, 69 S. E., 140.

There can be no debate as to the *corpus* of the trust estate. It is to
be held for the life of J. Banks Corl, with remainder to his legitimate
children in fee. The problem here presented concerns itself with the
disposition of the income and the duration of the trust. By the provisions
of the third clause in Item Eight "the remainder of the net income" is
to be paid to J. Banks Corl during his natural life; and upon his death,
which occurred 22 August, 1942, "the net income" is to be paid to
Maude Smith Corl until she remarries, which she did on 18 October,
1943, then "all profits, incomes and proceeds" are to be paid to the
legitimate children of J. Banks Corl until they attain the age of twenty-
one years, when the trust is to be terminated.

It is the contention of the testator's grandchildren that upon the re-
marriage of their mother a repugnancy resulted between the second and
third clauses in Item Eight of their grandfather's will, and that the
latter provision must therefor prevail in accordance with the general
rule of construction. *Ledbetter v. Culberson,* 184 N. C., 488, 114 S. E.,
753; *Haywood v. Trust Co.,* 149 N. C., 208, 62 S. E., 915. Compare
*McGuire v. Evans,* 40 N. C., 269, and *Field v. Eaton,* 16 N. C., 283.
It is conceded that to produce this effect, however, the two clauses must
be wholly inconsistent and incapable of reconciliation. *Taylor v. Brown,*
165 N. C., 157, 81 S. E., 137; *Baird v. Baird,* 42 N. C., 269. The rule
is, that "the intent as embodied in the entire instrument must prevail,
and each and every part must be given effect if it can be done by fair
and reasonable intendment before one clause may be construed as repug-
nant to or irreconcilable with another." *Smith v. Lumber Co.,* 155

N. C., 389, 71 S. E., 445; *Davis v. Frazier,* 150 N. C., 447, 64 S. E., 200. In short, the object of all interpretation is to arrive at the intent and purpose expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose unless at variance with some rule of law or contrary to public policy. *Krites v. Plott,* 222 N. C., 679, 24 S. E. (2d), 531.

We think the provisions of the instant will are adjustable to the various wishes of the testator when considered in the light of the situation as it appeared to him. *Holt v. Holt,* 114 N. C., 241, 18 S. E., 967. If the phrase "all profits, incomes and proceeds" be construed contextually and compared with the expressions, "the remainder of the net income" and "the net income," with which it stands connected, in accordance with the rule of *noscitur a sociis,* the apparent conflict between the second and third clauses of Item Eight of the will may be obviated during the existence of the trust. Indeed, the word "profits" usually signifies the gain realized from a business or investment over and above expenditures. *Samet v. Klaff,* 181 N. C., 502, 107 S. E., 2. All current expenses needed to care for the trust property would *ex necessitate* take precedence over disbursements to the ultimate beneficiaries, and it would seem that the payments called for in clause "2nd" were likewise intended to take precedence over disbursements to the ultimate beneficiaries. They are even preferred over payments to J. Banks Corl and his second wife. Also accordant with this construction are the two judgments of the Superior Court of Cabarrus County awarding Olive Rogers Corl recovery for her monthly allowance.

On the other hand, it may be conceded the testator did not foresee that his son's second wife would survive him and remarry, while his first wife continued unmarried. Even so, the trust was created for the benefit of all who come within its terms, with none excluded except in the event of remarriage on the part of the first wife or the widow. *Williams v. Thacher,* 186 Mass., 293, 71 N. E., 567; *Odescalchi v. Martin,* 96 Col., 156, 40 P. (2d), 241; *Dunn v. Hines,* 164 N. C., 113, 80 S. E., 410; *Heyer v. Bulluck, supra.*

It follows, therefore, as a necessary conclusion from the foregoing interpretation, that the interest of Olive Rogers Corl in the trust estate still subsists. Judgment accordingly.

The allowances made in the declaratory judgment will await further orders of the Superior Court.

Error and remanded.