The SILENT WOMAN, LTD., Mary Joan Mollet, Georgette Vershure, Noreen J. Lipton, Mary Clement, Leona Keipe, Cynthia Mullowney, Annagene Schultz, Diane Krauss, Leah Kielmann, Sandra Acterberg, Plaintiffs,

v.

Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.

No. 83–C–261.

United States District Court, E.D. Wisconsin.

April 30, 1984.

**448**

Quarles & Brady by W. Stuart Parsons, Milwaukee, Wis., for plaintiffs.

Joseph P. Stadtmueller, U.S. Atty. by Jan E. Kearney, Asst. U.S. Atty., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiffs brought this action for declaratory relief pursuant to 28 U.S.C. § 2201, seeking a declaration that their business relationship is not subject to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 et seq. Alternatively, the plaintiffs claim that the defendant's application of the FLSA to them constitutes a violation of due process. The defendant, who seeks to enforce the FLSA against the plaintiffs, has counterclaimed to recover backpay. This court's jurisdiction is based on 28 U.S.C. §§ 1331 and 1337(a). The parties have filed cross-motions for summary judgment on the issue whether the plaintiffs are covered by the FLSA and on the due process issue. The defendant's motion will be granted, the plaintiffs' denied.

## FACTS

The parties have stipulated to the relevant facts. The corporate plaintiff, Silent Woman, is organized under the laws of Wisconsin and has its principal place of business in Ripon, Wisconsin. Silent Woman is engaged in the wholesale and retail sale of women's and children's outerwear.

The firm operates retail shops in Ripon and in Boca Raton, Florida. Silent Woman has wholesale customers across the United States.

The nine individual plaintiffs are seamstresses who sew and embroider for Silent Woman in their homes. Since most of them have minor children, the women do needlework for Silent Woman only when their household duties allow. All nine of the women are accomplished seamstresses. They own their own sewing machines which cost an average of $700.00. Except for one woman who had been a factory seamstress, none of the women had sewn for money before working for Silent Woman, other than a relatively insignificant amount of work for neighbors, family or friends.

All of the seamstresses except one have sewn for Silent Woman since at least 1981. All have worked regularly on a part-time basis since their relationship with Silent Woman began, except on the few occasions when a seamstress was sick, or when there was not enough work. Since beginning to sew for Silent Woman, none of the seamstresses, with one exception, has attempted to find other customers. The one seamstress who has actively sought to expand her commercial activities began doing so after this suit was filed. In the 1981-mid-1983 period, none of the women had total earnings greater than $350.00 from non-Silent Woman sources. The women's total earnings from Silent Woman since 1981 ranged from $1,932.00 to about $15,000.00, with the seven in the middle all earning from $3,000.00 to $5,500.00.

Most of the seamstresses found work with Silent Woman through ads which the firm had placed in local newspapers. Silent Woman accepted applicants only after inspecting sample needlework. All qualified seamstresses were offered the same contract, drafted by Silent Woman. Although the contract is entitled "Employment Contract," the seamstresses are referred to as "independent contractors" throughout the text. Under the contract, seamstresses were permitted to sew professionally for others, but could not use designs created by Silent Woman for other work. The duration of the contract was to be indefinite, but either party could terminate on five days notice.

The terms of the seamstresses' compensation were also set out in the contract. Silent Woman paid according to piece rates which applied equally to all seamstresses. The piece rate was based loosely on the minimum wage. Each time it created a new article of clothing or design, Silent Woman asked one of four seamstresses to sew the garment and carefully record the total completion time. This time was multiplied by the minimum wage to yield the piece rate. Occasionally, Silent Woman has increased a piece rate based on a discussion with one or more of the seamstresses.

The seamstresses did not buy their cloth or other sewing materials. These were provided by Silent Woman in kits. The cloth was pre-cut for each garment. Specifications and designs, including applique designs, were provided, and Silent Woman reserved the right to reject any garment which did not strictly conform.

The seamstresses worked at home and set their own working hours. Silent Woman imposed no quotas or deadlines. The seamstresses could generally choose the garment they wished to sew. Silent Woman never inspected the seamstresses' homes or attempted to control the manner in which the work was done, insisting only that the finished product conform to specifications.

The defendant concluded from these facts that the seamstresses were Silent Woman's employees and, therefore, protected by the FLSA which applies to employers engaged in interstate commerce. 29 U.S.C. § 215; *Dickenson v. United States*, 353 F.2d 389 (9th Cir.), *cert. denied* 384 U.S. 908, 86 S.Ct. 1345, 16 L.Ed.2d 360 (1965). The defendant alleges that Silent Woman has violated the Act by failing to pay the seamstresses the minimum wage, contrary to 29 U.S.C. §§ 206 and 215(a)(2), and by failing to keep wage, hour and

condition records, contrary to 29 U.S.C. §§ 211 and 215(a)(5). The plaintiff argues that the FLSA is inapplicable because the plaintiff seamstresses are not Silent Woman employees, but rather are independent contractors.

## FAIR LABOR STANDARDS ACT

■ The FLSA definition of employ, "to suffer or permit to work," 29 U.S.C. § 203(g), is too broad to be useful in distinguishing an employee from an independent contractor. Where statutory definitions are inadequate, social welfare legislation is to be construed to achieve its purposes. *United States v. Silk*, 331 U.S. 704, 712, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757 (1947); *Usery v. Pilgrim*, 527 F.2d 1308, 1309, 1311 n. 6 (5th Cir.1976). New Deal legislation such as the National Labor Relations Act, the Social Security Act and the Fair Labor Standards Act was intended to aid those whose ability to provide for themselves depended largely on forces beyond their control. Thus, the courts have defined "employee" in these Acts with the protected class in mind: "... [I]n the application of social legislation, employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947); Accord, *Goldberg v. Whitaker House Corp.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961).

■ In *Bartels* and *Silk*, cases construing the Social Security Act, the Court listed five factors which might be useful in determining whether a worker is an employee or an independent contractor: (1) degree of control which the employer exercises over the manner in which the work is performed, (2) opportunities for profit or loss, (3) investment in facilities, (4) permanency or the relationship, and (5) skill required in the claimed independent operation. *Silk*, 331 U.S. at 716, 67 S.Ct. at 1469; *Bartels*, 332 U.S. at 130, 67 S.Ct. at 1549. As the *Silk* Court said of these factors, "No one is controlling nor is the list complete." *Silk*, 331 U.S. at 716, 67 S.Ct. at 1469. In *Ruth-*

*erford v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947), a case construing the FLSA decided the same day as *Silk*, the Court emphasized that the determination of the relationship depends on "the circumstances of the whole activity." *Rutherford*, 331 U.S. at 730, 67 S.Ct. at 1477.

■ Because the parties have based their arguments on it and because it is a useful means of orientation, I shall consider the five-part test of *Silk*. This test will not, however, be allowed to obscure the ultimate test of the seamstresses' status, which involves the economic realities under all the circumstances.

The plaintiffs argue that the seamstresses' independent contractor status is strongly indicated by the fact that Silent Woman exercises no control over the manner in which the seamstresses perform their work. The seamstresses have complete freedom in setting their working hours and may use any needlework technique they choose. I agree with the plaintiff that this factor is in their favor, but I also believe that it cannot be accorded significant weight in light of the relevant case law.

While Silent Woman exercises no control over the seamstresses' manner of performance, the same can be said of almost all employers of homeworkers. Nevertheless, it is established that Congress intended the FLSA to apply to employees working at home. For a short period after enactment of the FLSA in 1938, the Department of Labor attempted to enforce the Act's child labor, overtime, and minimum wage provisions in the homework setting. When this proved to be difficult, the Department conducted a study and determined that evasion of the FLSA by employers of homeworkers was so simple and widespread that enforcement was impractical. *Wage & Hour Div., Dept. of Labor, Findings and Opinion of the Administrator* 13 (1942), reprinted in I Joint Appendix 79. In 1943, the Department banned homework in certain industries, including the women's outerwear industry. In *Gemsco, Inc. v. Walling*, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945),

the Supreme Court upheld the ban as a proper exercise of the Department's authority to enforce the FLSA.

As the *Gemsco* Court noted, homeworkers "generally are part-time pieceworkers." 324 U.S. at 252, 65 S.Ct. at 611. It is in the nature of homework that the workers set their hours and work unsupervised, yet the Court upheld a ban on homework notwithstanding the possibility that homework was per se outside the scope of the FLSA. The *Gemsco* decision does not mean that all homeworkers are employees under the FLSA, but it does indicate that the plaintiff cannot successfully rely on the control factor to demonstrate that they are independent contractors.

The second of the five factors listed in *Silk* is the worker's opportunity for profit or loss. The plaintiffs argue that seamstresses have an opportunity to profit because the amount they earn depends upon the speed and skill with which they can complete items for Silent Woman. It is clear, however, that the concept of profit is not relevant here. "Profit" is the gain realized from a business over and above its expenditures. *Citizens National Bank v. Corl*, 225 N.C. 96, 33 S.E.2d 613, 616 (1945); *Fairchild v. Gray*, 136 Misc. 704, 242 N.Y.S. 192, 196 (1930). The only "expenditure" for which the plaintiff seamstresses obtain a return is their own labor; in my opinion this return is properly denominated "wages," not "profit."

The fact that the women have purchased sewing machines is not a cogent factor because Silent Woman compensates its seamstresses only for their labor at uniform rates. There is no bargaining through which a seamstress might obtain compensation sufficient to recover the cost of her sewing machine.

The third factor to be considered under the *Silk* test is the worker's investment in the claimed independent operation. The plaintiffs point out that all of the seamstresses own sewing machines, costing an average of $700.00. The plaintiffs have also deducted heat, telephone, electricity and mileage costs as business expenses.

Moreover, one of the plaintiff seamstresses claims to have spent thousands of dollars on an addition to her home in order to accommodate her sewing activities.

The named expenditures are not persuasive on the issue of the plaintiffs' status. Almost all homeworkers incur heating, electricity and telephone expenses. The significance of the sewing machines is diminished by the fact that the seamstresses owned their sewing machines before beginning to sew professionally.

Next, the plaintiffs argue that their independent status is indicated by the fact that the seamstresses' relationship with Silent Woman is not permanent in nature. The plaintiffs cite their contract, which allows either party to terminate the relationship on five days notice and permits the women to perform work for others.

While the contract gives the seamstresses the right to terminate their contract on five days notice, all of the plaintiff seamstresses have actually worked steadily for Silent Woman over a period of two years. It is obvious that the parties regard their relationship as a continuing one; work done for outside parties does not undermine the permanency of the Silent Woman work. Earnings from this outside work, generally performed sporadically for family and acquaintances, have been relatively insignificant.

The final consideration in the *Silk* analysis is skill. The plaintiffs point out that embroidery and applique are skilled crafts. This is undoubtedly true, but it is not particularly relevant to the issue whether the seamstresses are independent contractors. The skills indispensable to an independent operator such as organizational, management, and financial skills are not required of the plaintiffs. While the five-part *Silk* test strongly suggests that the plaintiff seamstresses are employees rather than independent contractors, a common-sense examination of the total situation removes any unresolved doubt.

When one is an employee, his livelihood depends immediately upon others. The

qualities that tend to distinguish the independent contractor in the economy are those essential to his individual success: initiative, judgment and foresight. The latter three words were used in *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947), an FLSA case wherein the Supreme Court explicitly disassociated these qualities from piecework: "While profits to the boners depended upon the efficiency of their work, it was more like piecework than an interprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor."

Silent Woman designs clothes based upon its assessment of the public taste, finds wholesale and retail buyers for its merchandise and sets prices for its garments at a level which must cover the cost of carrying inventory, maintaining retail outlets, advertising and a payroll, including the quasi-minimum wage rate payments to the plaintiff seamstresses. Commission of serious errors with respect to any of these matters could be fatal to Silent Woman. Precisely this element of risk marks the independent economic agent. *United States v. Silk*, 331 U.S. at 719, 67 S.Ct. at 1471 (1947).

By contrast, the plaintiff seamstresses' arrangement is quite uncomplicated. When a seamstress wants to earn money, she simply obtains pre-cut, pre-designed garments from Silent Woman. For her work, she receives approximately the minimum wage. The initiative in establishing the homework opportunity lay in Silent Woman's placement of advertisements. The seamstresses' earnings do not depend upon their judgment or foresight. It is apparent, in fact, that the plaintiff seamstresses do not undertake any of the risks inherent in independent status. They are occupied with family responsibilities and are satisfied with the opportunity to earn supplemental income in their spare time.

The seamstresses' dependence on Silent Woman is also shown by their lack of bargaining power. Rather than treat its seamstresses as independent agents, Silent

Woman offers all the same terms, a piece rate designed to yield the minimum wage. It is a "take it or leave it" proposition. Silent Woman does not negotiate with anyone individually. That the firm occasionally increases the piece rate for all seamstresses may demonstrate fair dealing but it does not demonstrate that the seamstresses are independent contractors.

In assessing the plaintiff seamstresses' dependence, it is relevant to ask how they might fare if Silent Woman failed. In fact, the women are extremely ill-prepared to find new markets for their needlework, and almost none had attempted to do so at the time the facts were stipulated. Since this lawsuit began, one of the plaintiffs has put together her own catalog and price list and has begun to seek other buyers for her needlework. This individual woman's initiative, design judgment, customer diversity and bargaining power may make her an independent contractor relative to her new buyers, but these factors are absent from her relationship with Silent Woman, and she remains its employee.

The issue decided here is not new. Almost identical fact situations arose in *Walling v. American Needlecrafts*, 139 F.2d 60 (6th Cir.1943), and *Mitchell v. Nutter*, 161 F.Supp. 799 (N.D.Me.1958). Both courts found that women doing needlework in their spare time at home were employees under the FLSA. In both cases, the women worked for one major employer who paid uniform piece rates at or below the minimum wage equivalent, and determined, or at least approved, all designs. In neither case had the women taken any significant steps to develop alternative buyers for their work. My decision today is consistent with these decisions. *See also Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961), (home part-time needleworkers held employees of their cooperative under the FLSA), and *Walling v. Twyeffort*, 158 F.2d 944 (2d Cir.1947), (tailors with shops at home held to be employees under the FLSA).

DUE PROCESS

■ Finally, the plaintiffs charge that the defendant has deprived them of property without due process of law. Specifically, the plaintiffs contend that their right to work at home is a property interest protected by the due process clause, that they were entitled to a hearing before being deprived of this property interest, and that the defendant's use of an irrebuttable presumption that homeworkers are employees deprived them of their right to be heard.

Assuming that the plaintiffs' interest in working at home is protected by the due process clause, and assuming that the government determined the seamstresses to be employees by applying an irrebuttable presumption, there can still be no due process violation because the defendant has no power to effect a deprivation of the claimed interest. The FLSA grants the defendant broad investigative powers, 29 U.S.C. § 211, but no power to close down any enterprise it determines to be in violation of the Act.

In order to restrain FLSA violations such as those allegedly committed by Silent Woman, the defendant must bring an action in federal district court. 29 U.S.C. § 217. Any presumptions entertained by the defendant are irrelevant in an enforcement proceeding because the district court is bound to determine an individual's status solely according to Supreme Court and other federal court decisions construing the FLSA or related legislation. It is thus apparent that the plaintiffs are provided with due process.

This decision and order resolves the plaintiffs' claims entirely. The parties should continue their trial preparations on the defendant's counterclaim alleging that Silent Woman owes its seamstresses back wages.

Therefore, IT IS ORDERED that the plaintiffs' motion for summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the defendant's motion for summary judgment be and hereby is granted.