William E. BROCK, Secretary of
Labor, United States Department
of Labor, Plaintiff,

v.

Michael LAURITZEN and Marilyn Lau-
ritzen, individually and doing business
as Lauritzen Farms, Defendants.

Civ. A. No. 84–C–980.

United States District Court,
E.D. Wisconsin.

Dec. 20, 1985.

Leonard A. Grossman, U.S. Dept. of La-
bor, Office of Solicitor, Chicago, Ill., for
plaintiff.

Walter A. Urick, Hart, Mich., and Rich-
ard Van Orden, Grand Rapids, Mich., for
defendants.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This case is before me on the Secretary
of Labor's motion for partial summary
judgment. The Secretary seeks a declara-
tion that as a matter of law, the migrant
farm workers involved in this case were
employees of Lauritzen Farms. Lauritzen
argues that the workers, who pick cucum-
bers during the harvest season, are inde-
pendent contractors not employees. Ana-
lyzing the relevant factors, I believe that
the migrant workers were Lauritzen's em-
ployees as a matter of law and therefore,
that they are within the protections of the
Fair Labor Standards Act, 29 U.S.C. § 201,
*et seq.*

The material facts in this case with refer-
ence to the question presented are largely
undisputed. Lauritzen is a farmer who
grows cucumbers intended for pickling in
Waupaca and Waushara, two Wisconsin
counties. These cucumbers, or pickles, as
they are often called, are not his only crop,
but he plants between 100 and 330 acres
per year. Lauritzen owns all or most of
the land upon which the cucumbers are
grown. He determines the type of seed to
use in planting and carries out the planting

with the help of employees who are paid at the hourly minimum wage. Lauritzen and his employees are responsible for fertilizing and irrigating the crops prior to and throughout the harvest season. Lauritzen is also responsible for the application of pesticides and herbicides to the crops prior to and during the harvest season.

When the harvest season commences, the cucumbers are handpicked by migrant workers. The process is simple: the workers pull the cucumbers off the vine. The harvest season lasts for a month or two, and during that time the same vines are harvested several times. The largest cucumbers are picked first in order to encourage more to grow. Cucumbers which are picked at a smaller size are worth more money because they are better suited to pickling. The migrant workers, therefore, pick the largest cucumbers first, then wait for more to grow and pick them when they reach the appropriate size. The workers thus control their hours to the extent that they are waiting for the cucumbers to reach the appropriate size for picking. The workers determine when the pickles have reached the appropriate size.

Cucumber picking does not require a great deal of equipment. The migrant workers use gloves for picking which they provide for themselves. Some workers also provide rubber trousers and capes for working in wet conditions. The other necessary equipment is a pail in which to place the pickles that have just been picked, a sack in which to place the pickles at the end of the day, and a truck into which the sacks are loaded and driven to the sorting station. The pails, sacks, and trucks are all owned by Lauritzen. Lauritzen also owns the sorting station in which the cucumbers are sorted for the processor who will purchase them.

The price for which the cucumbers are sold is determined by Lauritzen and the pickle processors. This price is set at the beginning of the season. The migrant workers have no control over the price which the processors and Lauritzen agree to buy and sell the cucumbers for. The migrant workers, therefore, control how much money they make solely by the amount and the sizes of cucumbers they pick.

The harvesting of cucumbers begins in July and lasts until approximately early September. Each year migrant worker families arrive at Lauritzen's farm from different parts of the United States. Some of the families working for Lauritzen have worked for him on an annual basis for six or seven years, while some may only come once or twice. The migrant workers provide their own transportation to Wisconsin and are not reimbursed for this expense by Lauritzen.

Once they arrive at Lauritzen Farms, the migrant workers are assigned a house by Lauritzen. They are provided with these houses free of charge (although some labor contracts called for a $30.00 weekly payment if the worker did not earn the weekly minimum wage) and regular workers are generally assigned the same house from year to year. Lauritzen also assigns each family a section of cucumber vines to harvest. The head of each family informs Lauritzen how much acreage they can harvest and Lauritzen assigns them the appropriate number of rows. Upon arrival, the head of each migrant family signs a "Migrant Labor Worker Agreement/Contract" with Lauritzen. The agreement does not always name all of the family members who will be working in the fields. Minor children do not sign separate agreements, although adult children may do so. The agreement sets forth the applicable wage rate as "50% 3.35 P.H." This means that workers are to be paid 50% of the gross receipts received for the cucumbers picked. The 3.35 corresponds to the minimum wage prescribed by the FLSA, and appears to be a guarantee of the minimum wage during weeks where 50% of gross receipts is insufficient to provide the minimum wage to all workers. The agreement also provides for a work guarantee of 45 hours per 2-week period and identifies the workers as migrant labor contractors instead of employees.

When signing the agreement, family heads are generally given a sheet which sets forth six grades of cucumbers and the price that Lauritzen is purportedly to be paid by processors for each grade. The prices are set forth by hundredweight, and in 1984 ranged from $3.00 per hundred pounds for the largest acceptable pickles to $22.00 per hundred pounds for the smallest. Workers are paid by the rate of 50% of the purported gross receipts regardless of whether Lauritzen actually sells all of his pickles. So, if a processor declines to purchase certain pickles, the migrant workers are nevertheless paid according to the price list.

Some workers arrive one or two weeks before the cucumber harvest season is ready to commence. These workers are often permitted to live in Lauritzen's houses and work for other local farmers. Once the cucumber harvest begins, however, the cucumbers demand the workers' full attention and workers do not work for other farmers.

During the harvest season, Lauritzen regularly visits his fields. According to most of the migrant workers deposed, Lauritzen has the power to fire them if he chooses. None of them could remember, however, a situation in which Lauritzen had asked a family to leave. Lauritzen denies that he exercised control or supervision over the migrant workers; he specifically stated that decisions with respect to agricultural husbandry practices, or when and what to pick are decisions made by the migrant family.

■ The decision as to whether workers are employees or independent contractors is based upon the individual facts of a case. However, this question is fundamentally a question of law, highly appropriate for decision on summary judgment. *Beliz v. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317, 1327 (5th Cir.1985). "Employee" is a term to be liberally construed in order to accomplish the remedial purposes of the FLSA; one such purpose is the cessation of payment of sub-minimum wages. *Rutherford Food Corp. v.*

*McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). In determining whether a worker is an employee or an independent contractor, courts should consider the degree of control which an employer has over the manner in which work is performed, the opportunities for profit or loss dependent upon the managerial skill of the worker, the worker's investment in equipment or material, the skill required, the permanence of the working relationship, and whether the service rendered is an integral part of the alleged employer's business. *Real v. Driscoll Strawberry Associates, Inc.,* 603 F.2d 748, 754 (9th Cir.1979); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). None of these factors is determinative; rather, all must be weighed in order to decide the economic realities of the situation. Central to the court's decision is whether the worker is economically dependent upon the business to whom he renders services. *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1311 (5th Cir.1976).

■ The facts of this case support a finding that the workers are employees. First, the workers have little control over the labor process. They do not determine the manner in which seed is planted, fertilized, irrigated, or dusted. They do determine their working hours but within the confines of a crop which must be harvested when it reaches a certain size. The crop itself fundamentally determines their working hours. Moreover, workers are supervised, however minimally, by Lauritzen. Lauritzen also holds the power to discharge workers, although apparently this has not been exercised.

Second, the workers have little opportunity for profit or loss based upon their managerial skills. Workers' earnings are based upon the amount and grades of the cucumbers picked. " 'Profit' is the gain realized from a business over and above its expenditures. [Citation omitted.] The only 'expenditures' from which the ... [workers] obtain a return is their own labor ..." *Silent Woman, Ltd. v. Donovan,* 585 F.Supp. 447, 451 (E.D.Wis.1984). Like

Judge Myron Gordon of this district in the *Silent Woman* case, I believe that the return on labor is appropriately classified as wages not profit. *Id.* Furthermore, the workers are paid for the cucumbers picked regardless of whether Lauritzen sells them to a processor; thus, they bear little risk of loss. Lauritzen argues that the workers are risking losses in that they pay for their own transportation to Wisconsin and might risk a bad harvest. This, however, is a common risk undertaken by many migrant agricultural workers and is not the type of investment-related risk which can properly be related to a worker's managerial skills.

Third, the migrant workers have virtually no investment in equipment or material. Their sole expenses consist of providing transportation and gloves for themselves and their families. Everything else, from housing to sacks, is provided by Lauritzen.

Fourth, little skill is required in the hand harvest of cucumbers. I do not dispute Lauritzen's statement that workers become more efficient pickers with more experience; this process occurs in almost all jobs. I doubt that it takes a great deal of skill to learn when cucumbers are the proper size to be picked and then pull them off the vines.

Fifth, the migrant workers do not have a permanent relationship with Lauritzen, although many return from year to year. Migrant workers are by definition temporary; they are employed for the duration of a specific harvest. This alone does not make them specialists or independent contractors. Lauritzen additionally argues that both he and the migrant workers regarded the workers to be independent contractors, and that they intended to establish this relationship through the migrant labor contract. I am not willing to give the parties' state of mind great weight in a case such as this where the totality of the circumstances point strongly to an employer-employee relationship.

Finally, I find that the service rendered by the migrant workers is an integral part of Lauritzen's business. Without harvest workers, Lauritzen's crops would rot on the vine. The workers in this case are economically dependent upon Lauritzen's business for their work during the cucumber harvest season; the fact that they may have other seasonal employment in no way mitigates their temporary economic dependence upon Lauritzen's business. The economic realities of this situation are those of an employment relationship.

In reaching my decision I note that many courts have found migrant farm workers to be employees within the meaning of the FLSA. *See e.g. Beliz v. W.H. McLeod & Sons Packing Co., id.,* 765 F.2d 1317; *Real v. Driscoll Strawberry Associates, Inc., id.,* 603 F.2d 748; *Hodgson v. Griffin & Brand of McAllen, Inc.,* 471 F.2d 235 (5th Cir.1973), *cert. denied,* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51; *Hodgson v. Okada,* 472 F.2d 965 (10th Cir.1973); *Donovan v. Gillmor,* 535 F.Supp. 154 (N.D.Ohio 1982). In reaching my decision I am also mindful of the recent decision by the United States Court of Appeals for the Sixth Circuit in *Donovan v. Brandel,* 736 F.2d 1114 (6th Cir.1984). The *Brandel* court held that agricultural workers who rowed and blocked cucumber vines and then picked the cucumbers were independent contractors. The *Brandel* workers, like Lauritzen's workers, contracted to receive 50% of the gross receipts. They were minimally supervised by the farmer, had little opportunity to increase their profit, other than through picking the right cucumbers, and had a minimal investment in equipment, purchasing only pails and gloves. The court relied on these factors, even though it also found that there was little evidence to support the district court's conclusion that the workers were exposed to a risk of loss, and in spite of their finding that the harvest was an integral part of the farmer's business. I disagree with the *Brandel* case because I believe that it disregarded the economic reality of migrant cucumber pickers. The economic realities of this case make the pickers completely dependent upon Lauritzen who plants and cares for the crops, determines the selling price, and provides them with housing.

The workers are exposed to little risk, their work requires little skill and almost no investment, and provides little opportunity for profit or gain. I therefore hold that the migrant workers who harvested cucumber for Lauritzen during 1982 to 1984 were employees within the Fair Labor Standards Act. Accordingly, the Secretary's motion for partial summary judgment is GRANTED.

A conference call to schedule proceedings to conclude this case is set for January 21, 1986, at 8:30 a.m.; this call will be initiated by the court.