In the Matter of the Wage and Hour Violation of John KOKESCH, and Kevin and Marlin Maresch.

No. C0–87–524.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Michael D. Madigan, Randy F. Boggio, Amundson, Johnson & Madigan, Minneapolis, for relators Kokesch and Kevin and Marlin Maresch.

Hubert H. Humphrey, III, Atty. Gen., Lori M. Mittag, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and NORTON, and MULALLY,* JJ., with oral argument waived.

## OPINION

NORTON, Judge.

Relators John Kokesch and Kevin and Marlin Maresch petitioned for a writ of certiorari for review of the Commissioner of Labor and Industry's decision that relators are required to keep records of employment for migrant farm workers. We affirm.

## FACTS

Relators are Renville County farmers who have planted substantial acreage in cucumbers. Relators contract with migrant farm workers each year to pick the cucumbers during the harvest season (mid-July to late August). These migrant families, primarily Mexican-Americans, pick various crops throughout the year in several states. Five families work on the Kokesch farm and ten work for the Maresch brothers. The sole substantive issue is whether these workers are employees or independent contractors, for purposes of the Minnesota Fair Labor Standards Act, Minn.Stat. §§ 177.21–.35 (1986).

Relators contract with the head of each family, presenting him or her with a percentage of the sale price that the family will receive for each cucumber picked. The workers have no say in setting the percentage figure, which is presented on a "take it or leave it" basis. Relators sell the cucumbers to the M.A. Gedney Company, which pays per the hundred weight depending on the size, with the smallest cucumbers bringing the highest price. Gedney, however, pays the grower extra for a good mix of sizes.

Relators house the migrant families. They may work for other farmers before the harvest begins, but once relators' crops are ready to pick, the families are expected to work exclusively for relators. Children as young as 12 years old work picking cucumbers. Relators do not screen the families for those with picking experience. Some of the families have worked for relators for five seasons.

Relators make all decisions concerning soil preparation, planting, irrigation, and applying insecticides. They do not, however, regularly supervise the picking. The Maresch brothers give some instructions and stake out the fields for assignment to

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

each family. Kokesch allows the families to select their own areas for picking.

Relators furnish all equipment necessary for picking except gloves and knee pads, which the workers buy themselves. Relators provide sacks, pails, and trucks to transport the crop, and they hire workers to do the weighing.

There are six grades, or sizes, of cucumbers included in relators' contracts with Gedney. Relators' expert witness, Michael Levine, testified that picking cucumbers "is a skilled endeavor, more so than most crops," involving picking a good mix of sizes and picking without damage to the vines, to avoid decreasing the number of cucumbers a vine will produce. Machine-picking destroys the vine, limiting production to one crop, whereas hand-picked vines may be picked up to twelve times. There was also testimony that proper technique can be learned just by watching other workers.

The Department of Labor and Industry received complaints concerning possible violations by relators of the Minnesota Fair Labor Standards Act. *See* Minn.Stat. §§ 177.21–.35 (1986). The department sought employee records from relators, records that they did not keep. As a result, the Commissioner gave notice of a hearing on the alleged violation of section 177.30, by a failure to keep employee records.

At the hearing, relators raised the issue of the department's failure to disclose the name of the complainants or to furnish copies of the complaints in response to discovery requests. The administrative law judge denied relators' motion to dismiss, finding they were entitled to disclosure under the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.-01–.90, but had shown no prejudice from the failure to disclose.

The parties stipulated the sole issue was whether the workers were employees or independent contractors. The administrative law judge concluded they were employees, and therefore relators were required to keep employment records. Relators filed exceptions and, following written argument, the Commissioner determined the harvesters were employees. The Commissioner also concluded relators were not entitled to disclosure of complainants' names under the Data Practices Act.

## ISSUES

1. Did the Commissioner err in finding disclosure of complainants' names barred by the Government Data Practices Act?

2. Is there substantial evidence in the record to support the Commissioner's determination that the workers were employees?

## ANALYSIS

### I.

Relators contend the contested case should have been dismissed because the department refused to disclose the names of the complainants. The Minnesota Data Practices Act provides:

Data that identify complaining employees and that appear on complaint forms received by the department of labor and industry concerning alleged violations of the fair labor standards act or section 181.75 are classified as private data.

Minn.Stat. § 13.79 (1986). "Private data on individuals" is defined as:

data which is made by statute or federal law applicable to the data: (a) not public; and (b) accessible to the individual subject of that data.

Minn.Stat. § 13.02, subd. 12 (1986).

Relators contend they are the "subjects" of the data. The Commissioner concluded that the statute codified a temporary classification that had been sought to protect complaining employees from possible retaliation by employers. Therefore, it is the employees who are "subjects" of the data. This conclusion also follows from the statutory language specifying "[d]ata that identify complaining employees." Minn.Stat. § 13.79 (1986). The plain intent of the statute is to protect the identities of complaining employees.

Relators, as alleged employers, are the "subjects" of the complaints themselves.

At the hearing, however, they made it clear their objection would not be satisfied by disclosure of the complaints with names deleted.

## II.

The parties agree the test for whether the cucumber harvesters are employees or independent contractors under the Minnesota Fair Labor Standards Act is the same as that developed to enforce the federal Fair Labor Standards Act. That test does not rely on common law concepts, but rather on six factors:

1) the degree of the alleged employer's right to control the manner in which the work is to be performed;

2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

4) whether the service rendered requires a special skill;

5) the degree of permanence of the working relationship; and

6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir.1979) (footnote omitted).

■ This test must be fitted to the circumstances of each case, keeping in mind that

"[I]n the application of [such] social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service."

*Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 145 (6th Cir.1977) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549–50, 91 L.Ed. 1947 (1947)). We must affirm the Commissioner's decision unless it reflects an error of law, is arbitrary and capricious, or is unsupported by substantial evidence. *Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

■ Three reported federal cases have examined the employment status of cucumber harvesters for purposes of the federal Fair Labor Standards Act. Two district courts have determined they are employees. *Brock v. Lauritzen*, 624 F.Supp. 966, 968–70 (E.D.Wis.1985); *Donovan v. Gillmor*, 535 F.Supp. 154, 160–63 (N.D.Ohio), *appeal dismissed*, 708 F.2d 723 (6th Cir. 1982). One circuit court of appeals has concluded they are independent contractors. *Donovan v. Brandel*, 736 F.2d 1114, 1116–20 (6th Cir.1984). All have employed the test outlined above.

### a. *Right to control*

Relators contend they exercise no control over the harvesting of cucumbers, leaving the entire picking operation in the hands of the workers. The Commissioner, choosing a broader focus, found that relators have control over every aspect of the operation except harvesting. He acknowledged relators do not exercise specific control over day-to-day harvesting. There was little evidence of direct supervision, although relators occasionally observe the harvesting work.

■ The district courts that have found an employment relationship have viewed the control issue in the context of the whole farming operation. *See Lauritzen*, 624 F.Supp. at 968 (workers had some control over working hours but were also "minimally" supervised); *Gillmor*, 535 F.Supp. at 161 ("[The growers] have the entire say on the cucumber crop"). The *Brandel* court narrowed the focus to the harvesting operation itself in finding the growers had no right to control. *Brandel*, 736 F.2d at 1119.

The context in which to analyze "right to control" must not obscure the economic realities by which the workers' economic dependence is judged. We conclude the Commissioner did not err in focusing on the entire farming operation, over which relators exercise nearly complete control.

### b. *Opportunity for profit or loss*

Relators contend the workers, by careful picking of the best mix of cucumber

grades, can maximize their income. The Commissioner concluded that "[m]anagerial skill plays virtually no role" in the workers' compensation. There was evidence the workers can increase their income by careful picking by achieving the best mix of sizes. Compared to the farmers' opportunities for profit or loss on their substantial investments, however, these opportunities are negligible. *See Real,* 603 F.2d at 755 (strawberry pickers' opportunities for gain depend more on the growers' managerial skills).

The harvesters bear no significant risk of loss. They are paid if the cucumbers they pick cannot be sold to Gedney. Even a total crop failure would result only in the loss of their costs of transportation to Minnesota.

### c. *Amount of investment*

The workers invest only in gloves and knee pads, if used, and the costs of transportation to Minnesota. Even narrowing the focus to harvesting, the workers' investment is insignificant. They buy only protective equipment, while relators furnish pails and sacks and all other equipment and facilities necessary. *See Brandel,* 736 F.2d at 1118–19 (although independent contractor status was found, the court did not claim the workers' investment, which there included the pails, was significant).

### d. *Skill required*

Relators contend cucumber picking is a skilled activity because the vines must be carefully handled and there are six grades of cucumbers to distinguish. Their expert witness testified to two distinct methods of picking. Testimony also showed, however, that relators do not screen families for picking experience, that children of 12 do the work, and that observing others is all that is required to learn it.

It is possible to magnify the skills involved by "evaluat[ing] [them] with reference to the task being performed," *Id.* at 1118, without reference to the wider world of skilled labor. As the court in *Lauritzen* pointed out, although pickers become more efficient with experience, "this process occurs in almost all jobs." *Lauritzen,* 624 F.Supp. at 969.

### e. *Degree of permanence*

The Commissioner concluded that although the permanency of the grower-harvester relationship was limited by the seasonal nature of the work, the workers work exclusively for relators during the season and frequently return the following year. Relators contend there is no permanency, no expectation the migrant families will return the following year, and no reason they will, other than for mutual satisfaction.

It is undisputed there is no contractual year-to-year relationship. The court in *Gillmor,* however, held an exclusive, season-long relationship is "sufficient indicia of permanency" in an inherently seasonal industry such as harvesting. *Gillmor,* 535 F.Supp. at 162–63.

### f. *Integral nature of the service*

Harvesting is unquestionably an integral part of cucumber farming. *See Brandel,* 736 F.2d at 1120.

### g. *The "economic realities" test*

The above factors must be weighed with a view to the "economic realities" of the situation to determine whether the worker is "economically dependent" on the business. *See Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). We believe the Commissioner correctly applied the "economic realities" test and declined to focus only on the harvesting phase of relators' operations in determining whether the harvesters are employees. Evidence on the individual factors provided substantial evidence the harvesters are "employees" for purposes of the Minnesota Fair Labor Standards Act.

### DECISION

The Commissioner did not err in finding disclosure of complainants' names barred

by the Government Data Practices Act. The Commissioner's decision finding the harvesters to be employees was supported by substantial evidence.

Affirmed.